523 So.2d 329 (1988)
Louise ROBINSON
v.
PACKARD ELECTRIC DIVISION, GENERAL MOTORS CORPORATION, Self-Insured.
No. 57703.
Supreme Court of Mississippi.
April 13, 1988.
Rehearing Denied May 4, 1988.
Paul Snow, David Slaughter, Paul Snow & Associates, Jackson, for appellant.
Charles T. Ozier, Andrew D. Sweat, Wise, Carter, Child & Caraway, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and GRIFFIN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Louise Robinson has appealed from a judgment of the Circuit Court of the First Judicial District, Hinds County, Mississippi, affirming the judgment of the Workers' Compensation Commission denying permanent partial benefits in her claim against Packard Electric Division of General Motors. She assigns the following error:
THE LOWER COURT ERRED IN REFUSING TO AWARD THE APPELLANT PERMANENT PARTIAL DISABILITY BENEFITS BECAUSE THE EMPLOYER FAILED TO OFFER ANY PROOF WHATSOEVER TO REBUT CLAIMANT'S UNDISPUTED PRIMA FACIE CASE OF LOSS OF WAGE-EARNING CAPACITY.
On April 11, 1983, while working in the course and scope of her employment with appellee, appellant was attempting to push a heavy battery in position in the forklift machine which she operated. She heard a "pop" in her back and immediately notified the supervisor that she had injured herself. The next morning appellant visited a Dr. McIlwain and remained off work for two weeks. On April 24 she returned to work and resumed her forklift job at the same wage.
*330 Appellant complained of continuing pain in her back. She left work on May 4 and consulted Dr. David E. Lipton, whose diagnosis was herniated lumbar disc. He hospitalized appellant and started a treatment program of traction, therapy and medication. After her release from the hospital, appellant continued with out-patient therapy three times per week for several months.
Appellant returned to work on August 26 and resumed her forklift job at the usual pay. After working for two hours, she complained of pain in her back and went home. She remained away from work until September 28 when she was reassigned to the job of "lead prep" at her usual wage. This job was described as the lightest-duty job appellee had to offer. The job involved the insertion of two small wires, one held in each hand, into a machine which, when activated by a foot pedal, affixed terminal lugs to the ends of the wires. This job was performed in a sitting position. There was no quota on the amount of units produced, appellant was allowed to work at her own pace and to stand and stretch whenever she liked. Appellant performed the lead prep job for some ten days, complaining of continuing back pain all the while. She again left work on October 6, 1983.
On January 9, 1984, appellant underwent surgery by Dr. Lipton to remove a disc at the L-4/L-5 level. Recovery was normal, and, on April 11, 1984, Dr. Lipton advised appellant she could return to work provided that her duties did not involve excessive bending, heavy lifting, over twenty (20) pounds, or prolonged periods of sitting or standing.
Appellee returned to work on April 16 for the first time since October 6, 1983. She was assigned to the lead prep job at her usual wage. After four hours of work, appellant complained of back pain and went home. Over the following weeks appellant sought employment elsewhere. She inquired at several grocery stores, drugstores, discount stores and fast food restaurants but was unable to secure a position.
On August 6, 1984, appellant returned to work at appellee's plant, but after one month she began experiencing back pain, and she left work for the last time sometime between September 6 and October 11, 1984.
Appellant filed her motion to controvert on July 6, 1983. Thereafter, appellee paid all of appellant's medical expenses; temporary disability benefits in the amount of $3,760.00 were paid as well. When the case came for hearing before the administrative judge, the principal issues in contest were the duration of appellant's temporary total disability and whether appellant had suffered any permanent disability or loss of wage-earning capacity.
The case was presented over the course of three hearings held on November 22, 1983, April 27, 1984, and July 27, 1984. Witnesses were appellant, her son, and her work supervisor. The only medical evidence was the testimony of Dr. Lipton. He stated that appellant reached maximum medical recovery on April 11, 1984. He further stated that appellant had sustained a 15% permanent partial disability to the body as a whole and that she could perform a job not requiring excessive bending, lifting over 20 pounds, or prolonged sitting or standing.
The administrative judge found that appellant's injury was compensable; that appellant was temporarily totally disabled from April 11, 1983, to April 11, 1984; and that appellant suffered no loss of wage-earning capacity. Appellee was ordered to pay disability benefits in the amount of $112.00 per week for the period of temporary disability specified together with any statutory penalties and medical expenses remaining unpaid.
Upon appeal to the full Commission, the order of the administrative judge was affirmed without comment. Appellant then appealed the Commission order to the Circuit Court of the First Judicial District of Hinds County, and the circuit court affirmed the Commission order.

LAW
The administrative judge found that appellant sustained a fifteen percent (15%) *331 permanent partial disability to the body as a whole "from a medical standpoint" but that she sustained no loss of wage-earning capacity with regard to her ability to perform the duties required of the job the appellant was offered by the appellee. Generally, "medical" disability is the equivalent of functional disability and relates to actual physical impairment. "Industrial" disability is the functional or medical disability as it affects the claimant's ability to perform the duties of employment. Piggly-Wiggly v. Houston, 464 So.2d 510 (Miss. 1985); Dunn, Mississippi Workmen's Compensation § 86, pp. 101-04 (3d ed. 1982). Thus, the claimant's functional or medical disability may be only 15%, but when applied to the duties of employment, the result may be that the claimant suffers a much greater industrial disability. Marshall Durbin, Inc. v. Hall, 490 So.2d 877 (Miss. 1986); Piggly-Wiggly, supra; Futorian-Stratford Furniture Co. v. Davis, 185 So.2d 665 (Miss. 1966); I. Taitel & Son v. Twiner, 247 Miss. 785, 157 So.2d 44 (1963). Similarly, a claimant who has suffered a functional/medical disability of 15% may have no industrial disability at all if the functional impairment does not impede the claimant's ability to perform the duties of employment. See e.g., Arender v. National Sales, Inc., 193 So.2d 579 (Miss. 1966).
Apparently, in the present case, the administrative judge relied upon the above principle in finding that appellant's medical/functional disability did not result in industrial disability.[1] Also, appellant's argument that uncontradicted medical proof of functional disability ipso facto establishes industrial disability flies in the face of the principle. Instead, to establish industrial disability, the burden is upon the claimant to prove (1) medical impairment, and (2) that the medical impairment resulted in a loss of wage-earning capacity. Mississippi Code Annotated §§ 71-3-3(i), 71-3-17(c)(25) (1972).
In support of her claim for loss of wage-earning capacity, appellant showed that she had worked for appellee continuously from October, 1973; that, in the twelve months immediately proceeding her injury she earned $29,514.97; that, in the twelve months immediately following her injury, she worked approximately 60 days and earned $1,734.00; and that, during such time, she had sought employment from at least 13 other employers. The administrative judge expressly found that appellant's attempts to secure other employment were reasonable. However, despite appellant's testimony that, due to severe back pain, she could not perform even the lightest job in appellee's plant, the administrative judge concluded appellant suffered no loss of wage-earning capacity. The fact that the appellant has been able to earn only a small fraction of her former wages is strong evidence of disability and prevails over medical estimates which are related to "functional," as distinguished from "industrial" loss of capacity. Dunn, supra, § 67, pp. 76-77, citing Futorian-Stratford Furniture Co. v. Davis, 185 So.2d 665 (Miss. 1966), states: "This issue finds no statutory guide or definition, and much is, therefore, left to the uncertainty of a factual estimate which is necessarily lacking in mathematical accuracy." See also Ebasco Services, Inc. v. Harris, 227 Miss. 85, 85 So.2d 784 (1956).
The administrative judge held that appellant's evidence offered in support of loss of wage-earning capacity was sufficient to support a finding of temporary total disability from April 11, 1983, to April 11, 1984. In declining to find a permanent loss of wage-earning capacity, the administrative judge considered the following:
(1) Appellant's physician testified that, after April 11, 1984, appellant was physically able to return to her original forklift job provided that she "have a period to rest" following every 60 to 90 minutes of duty;[2]

*332 (2) Appellant attempted to return to work only twice after April 11, 1984, working a total of one month; and
(3) After appellant's injury, appellee offered her a simple non-strenuous job at her former wage with ample opportunities for rest consistent with medical recommendations.
The uncontradicted evidence before the administrative judge and the Commission regarding loss of wage-earning capacity showed:
(1) From a medical standpoint, appellant was able to work, but pain meant over-exertion.
(2) Appellee was ready, willing and able to provide appellant with a suitable job at her usual wages; and
(3) Appellant experienced severe pain each time she attempted to work.
The administrative judge expressly found that appellant's attempts to secure other employment were reasonable. The administrative judge made no finding that appellant's testimony was untrustworthy, and there is no substantial evidence in the record to indicate that appellant's testimony as to post-injury pain should not have been believed.
The Commission's decision must be supported by substantial evidence; otherwise, it will not be upheld. Reichhold Chemical, Inc. v. Sprankle, 503 So.2d 799 (Miss. 1987); Marshall Durbin, Inc. v. Hall, 490 So.2d 877 (Miss. 1986); Delta Drilling Co. v. Cannette, 489 So.2d 1378 (Miss. 1986).
The Workers' Compensation Law is construed liberally, and doubtful cases are to be resolved in favor of compensation so that the beneficent purposes of the act may be achieved. General Electric Co. v. McKinnon, 507 So.2d 363 (Miss. 1987); Reichhold Chemical, supra; Barham v. Klumb Forest Products Center, Inc., 453 So.2d 1300 (Miss. 1984); Johnston v. Hattiesburg Clinic P.A., 423 So.2d 114 (Miss. 1982).
After considering the uncontradicted evidence and the entire record, we are of the opinion that the Commission's denial of permanent disability benefits was not supported by substantial evidence and that the lower court erred in affirming the Commission on that issue. Therefore, the judgment of the lower court is reversed as to permanent partial disability benefits, and this cause is remanded to the Workers' Compensation Commission for determination of the extent of permanent partial disability.
REVERSED AND REMANDED TO THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION.
HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] The terms used by the administrative judge are imprecise. Instead of "industrial" disability, he referred to the same as "functional" disability.
[2] Appellant's physician qualified this prognosis by stating that anytime appellant experienced back pain, "whether it was related to her regular, normal lifestyle or related to any work activity," appellant was advised to cease from such activity, as the pain was a signal that appellant was exceeding her capacity.