625 So.2d 770 (1993)
Franklin N. OSWALT
v.
ABERNATHY & CLARK and the Aetna Casualty and Surety Company.
No. 91-CC-0598.
Supreme Court of Mississippi.
September 30, 1993.
Jimmy D. Shelton, Tupelo, for appellant.
Richard C. Coker, Markow Walker Reeves & Anderson, Jackson, for appellees.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
SMITH, Justice, for the court:
This case comes on appeal to this Court following the decision of the Workers' Compensation Commission to deny Oswalt's claim for permanent disability benefits arising out of his work-related injury. Further, the Commission determined that certain treatments provided Oswalt were not medically reasonable or necessary and thus did not find Abernathy & Clark and Aetna liable for their payment. The order of the Commission was affirmed upon appeal to the Lee County Circuit Court. Upon appeal to this Court, Oswalt assigned the following issues for review:
I. THE ADMINISTRATIVE JUDGE ERRED IN NOT FINDING THAT CLAIMANT WAS TEMPORARILY TOTALLY DISABLED AT THE HEARING BECAUSE THERE WAS A SHOWING BY A CLEAR PREPONDERANCE OF THE EVIDENCE THAT SUCH WAS THE CASE.
II. THE ADMINISTRATIVE JUDGE ERRED IN NOT FINDING THE MEDICAL TREATMENTS OF DR. JOHN McFADDEN, DR. JOHN A. FRENZ, AND DR. IVAN BARBER FOR THE CARE OF THE CLAIMANT TO BE REASONABLE AND NECESSARY.
*771 While we affirm the decision of the Commission on the issue of the extent of compensable disability and affirm the disallowance of payment for the discogram, we reverse the decision to deny compensation for certain medical treatment considered as not reasonable or necessary.

FACTS
Franklin Oswalt was injured in April 1987 in his occupation as a sheet metal worker for Abernathy & Clark. Oswalt received temporary total disability payments for the admittedly compensable injury from April 29, 1987, until June 21, 1988. He filed a Petition to Controvert in October 1987.
A hearing before an administrative judge took place in October 1989. Testifying at the hearing were Oswalt and his physician, Dr. John McFadden. In addition, the depositions of three (3) other doctors were offered into evidence.
Franklin Oswalt suffered a back injury while operating a hand brake. He testified that on the morning following the day of the accident he had difficulty getting out of bed, but decided to go to work. However, on the way he experienced a muscle spasm and drove himself to the emergency room instead. Oswalt was told he had a "pulled muscle" and was instructed to see his company doctor, Dr. Taylor, who reviewed Oswalt's x-rays and recommended physical therapy.
Oswalt sought further medical attention about eight days later from Dr. John McFadden when his pain continued to worsen. His job required some physical exertion of energy, depending on the thickness of the metal he worked with, and involved his keeping track of numbers and figures. Oswalt testified he could no longer do this work after his injury, was unable to sit in a straight chair for over an hour, and had been walking with a cane.
Dr. John McFadden stated he specializes in "pain medicine." McFadden admitted he had no formal training in neurosurgery or orthopaedic surgery. After one and one-half months of conservative treatment, McFadden was of the opinion that Oswalt had sustained a thoracic back injury. McFadden sought to have a "discogram" performed; he testified this procedure would indicate whether Oswalt had a partially torn disc which had not been indicated by x-rays, thermographies, an MRI, or CT scans, all of which showed normal results. Because McFadden had not performed a discogram in the upper thoracic area he tried to obtain the assistance of Dr. John Frenz, a neurosurgeon. According to McFadden, he could not obtain authorization from the appellee/insurance company to have the procedure performed. McFadden attempted the discogram himself several times, but stated Oswalt kept fainting before it was completed. Eventually McFadden personally took Oswalt to Lubbock, Texas, where the procedure was performed by Dr. Ivan Barber, and the problem, an "internal disc disruption" was, in McFadden's opinion, found.
In addition to Dr. Barber and Dr. Frenz, Dr. McFadden also referred Oswalt to Dr. Kit Mays (Memphis), Dr. Gabor Racz (Texas), Dr. James T. Robertson, and Dr. Hoyt Crenshaw (Memphis) in the course of trying to alleviate Oswalt's pain. It was McFadden's opinion that Oswalt needed surgery which the insurer would not approve. McFadden testified that Oswalt remained temporarily totally disabled as of the hearing date.
Dr. James T. Robertson, neurosurgeon, testified he examined Oswalt on a referral from Dr. McFadden. After testing, including a complete myelogram, Dr. Robertson was of the opinion that Oswalt had sustained a muscle sprain necessitating a course of conservative treatment. Robertson found no evidence of a ruptured disc. In reference to Dr. McFadden's treatments, including steroid injections, Dr. Robertson informed Dr. McFadden that he was "very much opposed to anything other than conservative treatment." Further, Dr. Robertson suggested Dr. McFadden "undertake thoracic disc injections with a great deal of trepidation and concern," and it was his view that they should be avoided. Robertson was of the opinion that Oswalt had reached maximum medical recovery and should have returned to work by January 4, 1988, and had suffered no permanent disability.
*772 Dr. Forrest Tutor, neurosurgeon, saw Oswalt at the request of the appellee/insurance company. As a result of his neurological examination, Dr. Tutor concluded Oswalt had a muscle stretch injury, which was "essentially over." Test results indicated nothing abnormal and there was no evidence of permanent disability. Tutor testified it would be beneficial for Oswalt to return to work to loosen and strengthen the muscles which may have been weakened.
Dr. John Frenz, neurosurgeon, examined Oswalt on a referral by Dr. McFadden. Based on his examination, Frenz recommended heat treatments, a trial of medications including muscle relaxers and anti-inflammatory medicines, and a heat molded back brace. Frenz stated he found no objective evidence to substantiate a causal relationship between Oswalt's symptoms and a thoracic disc problem. Frenz was of the opinion that Oswalt had "total disability" to the body on the date of his visit. However, Frenz did not see Oswalt again and had no opinion on whether the total disability was permanent or still existed as of the hearing.

LAW

I.
Oswalt argues it was established before the Commission by a clear preponderance of the evidence that he remained in a temporarily totally disabled condition. Appellees, on the other hand, argue that the Commission's decision had to be based on the credibility of witnesses and that the administrative judge and the Full Commission had substantial credible evidence upon which to base the decision to deny further disability benefits.
In addition to Oswalt's testimony, the administrative judge heard testimony from Oswalt's primary treating physician, Dr. McFadden, and three other treating physicians. It was the opinion of Dr. McFadden alone that Oswalt's problem was an "internal disc disruption" which required surgery. Conflicting with Dr. McFadden's view were the opinions of Dr. Robertson and Dr. Tutor, neurosurgeons, who were both of the opinion that Oswalt had sustained a muscle sprain or muscle stretch injury.
The administrative judge found the testimony of Dr. Robertson to be most credible. It was Dr. Robertson's expert opinion that Oswalt's injury showed no evidence of a ruptured disc or "anything that would interfere [with] a projected uneventful recovery." On a follow-up exam, Robertson found Oswalt to be moving his back "much better, without muscle spasm." Robertson testified that Oswalt should have reached maximum recovery and returned to work by January 4, 1988, and suffered no permanent disability. Dr. Tutor was similarly of the opinion that Oswalt's muscle injury was "essentially over," that Oswalt had reached maximum medical recovery, and that there was no evidence of permanent disability. In fact, Dr. Tutor stated it would be beneficial for Oswalt to return to work in order to strengthen and loosen up his muscles. Dr. Frenz examined Oswalt only once and would state no opinion on whether his "total disability" still existed at the time of the hearing or whether there was any permanent disability.
"This Court will not determine where the preponderance of the evidence lies when the evidence is conflicting, the assumption being that the Commission, as the trier of fact, has previously determined which evidence is credible, has weight, and which is not." Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293, 1297 (Miss. 1990). Further, "[t]he principle is well established in this state that, if a decision of the Mississippi Workers' Compensation Commission is based on substantial evidence, the circuit court and this Court are bound by the finding of fact made by the Commission." International Paper Co. v. Kelley, 562 So.2d 1298, 1301 (Miss. 1990); Davis v. Scotch Plywood Co. of Mississippi, 505 So.2d 1192 (Miss. 1987); Sperry-Vickers, Inc. v. Honea, 394 So.2d 1380 (Miss. 1981).
In the case sub judice, the administrative judge considered conflicting evidence and decided that the most credible evidence indicated that Oswalt suffered a muscle sprain injury which resulted in temporary total disability lasting until January 4, 1988; at that time he had reached maximum medical recovery. *773 The decision was in accordance with testimony by Doctor Robertson and Doctor Tutor. Further support for the decision is found in the fact that no doctor testified that permanent disability was indicated. Upon appeal to and further argument before the Full Commission, the decision of the administrative judge was affirmed. We are of the view that the order of the Full Commission was based upon substantial evidence and therefore affirm the lower court on this issue.

II.
Oswalt submits that Dr. McFadden followed normal procedures to diagnose the source of Oswalt's pain before necessarily resorting to the use of discography. Oswalt concludes that "when a procedure has actually revealed a physical defect related to the origin of ... pain, albeit a controversial procedure, such procedures, as a matter of law, should not be deemed to have been unnecessary or unreasonable."
The administrative judge made the following findings of fact regarding Oswalt's treatment:
5. Regarding the reasonableness and necessity of the course of medical treatment rendered by Dr. McFadden, I hereby find the credible medical evidence establishes adequate diagnostic procedures were conducted to rule out a thoracic disc rupture, such procedures consisting of neurological examinations, CT scans, MRI scanning and myelographic studies. Therefore, I find the discography procedure performed on claimant and all medical treatment incident thereto was not medically reasonable and necessary.
Dr. McFadden admitted he was advised by defendants that the discography procedure would not be authorized. Nevertheless, he proceeded to attempt the procedure himself and to arrange for the procedure to be performed by Dr. Frenz and Dr. Barber. Defendants having placed claimant as well as Dr. McFadden on notice that they would not be responsible for these charges, together with the fact that the credible medical evidence establishes this procedure was not reasonable or necessary, I hereby find defendants are not liable for payment of the attempted discography by Dr. McFadden and are not liable for payment of services rendered by Dr. Frenz and Dr. Barber.
The judge further found appellees not responsible for the payment of expenses for caudal steroid or colchicine injections as not medically reasonable or necessary treatment.
Testimony by Dr. McFadden indicates that upon beginning to treat Oswalt, he performed various diagnostic tests. Thereafter, Oswalt was treated conservatively for approximately one and one-half months. Testing included reflex and motor examinations, neurological examinations, initial x-rays and lumbar and cervical thermographies; these tests showed nothing abnormal. McFadden stated he also requested an MRI and eventually two (2) were taken, both showing normal results. Treatment included a cervical collar, rib binder, muscle relaxers, and anti-inflammatory medications.
Thereafter McFadden began attempting to have a discogram performed as it was his opinion that it was the only remaining way to diagnose the origin of Oswalt's pain. McFadden testified he referred Oswalt to Dr. Robertson to have the procedure done, but Dr. Robertson advised against discography. Dr. McFadden then attempted to have Dr. Frenz perform the discogram, but the procedure was not performed. McFadden admitted that he was unable to obtain authorization from the appellee/insurer for the discography, but that he subsequently paid for Oswalt's trip to Lubbock, Texas, where the discogram was performed by Dr. Barber. McFadden was also unable to obtain approval for the surgery which he continued to recommend.
Upon reviewing the testimony of each of the physicians, we must affirm the decision finding appellees not responsible for payment of Oswalt's treatment relating to discography. Testimony by Dr. Robertson indicated the procedure was controversial because it was considered unreliable and not indicated by Oswalt's type of injury. Dr. Tutor testified that a discogram was unnecessary and that a myelogram was "far more dependable" in any event. Further, Dr. Tutor stated the *774 use of colchicine was not indicated for Oswalt's type of injury.
In addition, Dr. McFadden had been put on notice that the procedure would not be authorized. For these same reasons the decision to deny payment for the treatment rendered by Dr. Barber will also be affirmed. "Absent an error of law, and if the decision of the Commission is based upon substantial evidence, the decision will be affirmed on appeal." Metal Trims Industries, Inc. v. Stovall, 562 So.2d at 1296-97. We find more than the required quantum of evidence justifying this decision.
Yet, this Court will not merely rubber stamp a decision of the Commission which is supported by only a scintilla of evidence. Id. at 1297. We cannot agree that Dr. McFadden's treatment of Oswalt prior to his being given notice that discography would not be authorized was either unnecessary or unreasonable. In fact, the initial diagnostic tests and treatments of Oswalt by Dr. McFadden were in line with those recommended and performed by Dr. Robertson and Dr. Tutor. The same holds true for the services rendered by Dr. Frenz, who did not attempt to perform a discogram and who agreed that Oswalt's symptoms were consistent with a muscular injury. Dr. Frenz's services included the use of heat treatments, muscle relaxers and anti-inflammatory medicines.
Clearly, a portion of those services rendered by Dr. McFadden and Dr. Frenz could only be termed "conservative" and were thus consistent with those considered "reasonable and necessary" in the findings of the Commission. As such, they are also compensable. We therefore reverse and remand to the Commission for a determination of the amount of compensation due Dr. McFadden and Dr. Frenz for their conservative testing and treatment of Oswalt. The decision of the Commission that the use of discography as well as caudal and colchicine injections was unnecessary and unreasonable and not compensable by the appellees was supported by substantial evidence and remains unchanged.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.