755 So.2d 1263 (2000)
Mary C. FORD, Appellant,
v.
EMHART, INC. d/b/a True Temper Sports, Inc. and Aetna Casualty and Surety Company, Appellees.
No. 1999-WC-00044-COA.
Court of Appeals of Mississippi.
February 8, 2000.
*1264 Timothy William Pace, Amory, Attorney for Appellant.
John H. Freeland, Jackson, Mark R. Smith, Oxford, Andrew David Shull, Ridgeland, Attorneys for Appellees.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Mary Ford appeals the Monroe County Circuit Court's decision affirming the Mississippi Workers' Compensation Commission's denial of Ford's claim for compensation. Ford claims the following as error for review
I. WHETHER THE FULL COMMISSION, AFFIRMED, COMMITTED ERROR BY FAILING TO FIND *1265 THAT THE APPELLANT'S 10% PERMANENT PARTIAL IMPAIRMENT FROM A MEDICAL STANDPOINT TO BOTH FEET RESULTS IN A 100% LOSS OF INDUSTRIAL USE OF BOTH LOWER EXTREMITIES.
II. WHETHER THE FULL COMMISSION, AFFIRMED, FOLLOWED THE PROPER LEGAL STANDARD IN FINDING THAT THE APPELLANT DID NOT MAKE A REASONABLE EFFORT TO OBTAIN GAINFUL EMPLOYMENT AFTER SHE LEFT THE EMPLOY OF THE APPELLEE ON DECEMBER 31, 1996, AND BEFORE THE EVIDENTIARY HEARING ON APRIL 9, 1997.
III. WHETHER THE CIRCUIT COURT COMMITTED ERROR IN DENYING THE APPELLANT'S MOTION TO REMAND THE CASE TO THE FULL COMMISSION.

FACTS
¶ 2. Mary Ford was hired by True Temper on February 5, 1981. Her job required her to push carts of golf shafts into an oven which baked the shafts for one and a half hours at a temperature of 560 degrees. She also pushed the carts out of the oven and into a chemical and acid wash. She sustained an injury to both lower extremities on May 25, 1990, when some of the acid or chemicals spilled onto the floor and burned her feet. She was initially seen by Dr. Bill Rogers in the emergency room at Gilmore hospital. She subsequently went to see Dr. Ellis Parker, who gave her topical cream and told her to keep her feet elevated. On June 25, 1990, Dr. Parker released her to return to work without any restrictions. Ford continued to work at True Temper until her voluntary retirement on December 31, 1996.
¶ 3. Ford testified that she had continued swelling, pain, and irritation in her feet which culminated in her being determined disabled by the Social Security Administration as of May 31, 1996. The notice of award of the Social Security Administration was issued on January 4, 1997. After Ford officially left True Temper in December 1996, she testified that she attempted to obtain other employment at approximately nineteen businesses. Medical testimony from Dr. Michael Winkelmann, and medical records affidavits from Dr. William B. Rogers, Dr. Rickey H. Bullard, Dr. Jeffrey T. Summers, Dr. John T. Frazier, and Dr. William E. Bowlus were presented. Dr. Brian Forrester's and Dr. Ellis Parker's reports were also presented
¶ 4. An EMG was performed by Dr. Michael Winkelmann on October 11, 1996 which determined evidence of peripheral neuropathy in her lower extremities. In his testimony Dr. Winkelmann explained that peripheral neuropathy is damage to the nerves that can be secondary to metabolic problems, such as a diabetic having decreased sensation in their feet. It can also be caused by chemical exposure or pesticide exposure. Dr. Winkelmann testified that Ford's peripheral neuropathy was caused by skin damage that affected subcutaneous nerves, consistent with her chemical burn in 1990. He testified that it is not very likely that she would resolve her peripheral neuropathy symptoms. However, he testified that he could not determine exactly what Ford's work or physical limitations were without a good functional capacity evaluation which True Temper and Aetna would not provide. The administrative judge and the Commission ruled that Ms. Ford be awarded temporary total disability benefits from May 25, 1990 through June 25, 1990, and that she be awarded a permanent partial disability of 10 percent to each foot.
¶ 5. On appeal to the circuit court Ford filed a motion to remand the case to the Commission to accept a medical report *1266 obtained after the Commission hearing from William B. Rogers, in which he found that Ford can only stand/walk one hour in an eight-hour day and only around five minutes without interruption. The circuit court denied Ford's motion to remand.

ANALYSIS

I. WHETHER THE FULL COMMISSION, AFFIRMED BY THE CIRCUIT COURT, COMMITTED ERROR BY FAILING TO FIND THAT THE APPELLANT'S 10% PERMANENT PARTIAL IMPAIRMENT FROM A MEDICAL STANDPOINT TO BOTH FEET RESULTS IN A 100% LOSS OF INDUSTRIAL USE OF BOTH LOWER EXTREMITIES.
¶ 6. Our review of decisions of the Workers' Compensation Commission is a narrow one. Under our deferential standard of review, "[t]he findings and order of the Mississippi Workers' Compensation Commission are binding on this Court so long as they are supported by substantial evidence." Sibley v. Unifirst Bank for Sav. Through Resolution Trust Corp., 699 So.2d 1214, 1217 (Miss.1997). "We are not permitted to re-weigh the evidence to determine where, in our opinion, the preponderance of the evidence lies." Lanterman v. Roadway Exp. Inc., 608 So.2d 1340, 1345 (Miss.1992). Where two or more qualified medical experts reach different conclusions, we "will not determine where the preponderance of the evidence lies when the evidence is conflicting, the assumption being that the Commission, as the trier of fact, has previously determined which evidence is credible, has weight, and which is not." Oswalt v. Abernathy & Clark, 625 So.2d 770, 772 (Miss.1993). The Commission's finding will be reversed on appeal only where such finding is clearly erroneous and contrary to the overwhelming weight of the evidence. Sibley, 699 So.2d at 1218.
¶ 7. We have held that a medical disability is "the equivalent of functional disability and relates to actual physical impairment." Robinson v. Packard Elec. Div., General Motors Corp., 523 So.2d 329, 331 (Miss.1988). "Industrial disability is the functional or medical disability as it affects the claimant's ability to perform the duties of employment." Id. In Robinson the court went on to state that to show industrial disability, the claimant bears the burden of proving medical impairment and a loss of wage-earning capacity as a result of the medical impairment. Id.
¶ 8. The administrative law judge and the Full Commission found that Ford suffered a 10% permanent partial impairment to each foot due to the accident, based on the medical records and testimony presented at the hearing. Medical testimony from Dr. Michael Winkelmann, and medical records affidavits from Dr. William B. Rogers, Dr. Rickey H. Bullard, Dr. Jeffrey T. Summers, Dr. John T. Frazier, and Dr. William E. Bowlus were presented. Dr. Brian Forrester and Dr. Ellis Parker's reports were also presented.
¶ 9. Immediately after the incident, the claimant was treated by Dr. Bill Rogers and Dr. Ellis Parker. The record reflects that Dr. Parker released Ms. Ford to return to work without any restrictions on June 25, 1990. Ms. Ford was treated by Dr. John Frazier starting on July 10, 1990. Dr. Frazier's affidavits show that by July 1, 1991 her feet had improved substantially and he concluded that the only period of time in which Ms. Ford had been totally disabled was between May 25, 1990 and June 1990. He also did not assess any permanent impairment. Furthermore, Ms. Ford saw Dr. Scott Jones, an orthopedic surgeon, in September 1990 and his records stated that her skin was healed and there was no evidence of previous chemical burns. Dr. Ricky Bullard, a podiatrist, saw Ms. Ford beginning September *1267 10, 1993, and he concluded she did not have any impairments which would affect her day to day activities and assessed her as having a 10 percent impairment rating to each foot. Ms. Ford went to see Dr. Brian Forrester of the University of Alabama at Birmingham School of Medicine on January 18, 1996, and he concluded that Ms. Ford's foot pains were probably not related to the chemical burns to her feet. Finally, Ms. Ford also went to see Dr. Michael Winkelmann. Dr. Winkelmann assessed Ms. Ford at 5 percent partial permanent impairment to each foot and concluded that at least part of her foot pain was probably not caused by the chemical burns. He also stated that Ms. Ford had reached maximum medical improvement years ago and she was capable of continuing to work. Based on this evidence, the Commission and the administrative law judge reasonably determined that claimant was not permanently and totally disabled and unable to work and we find no error with that decision.
¶ 10. Ford contends that the Commission did not properly weigh the fact that Ford could not perform the "substantial acts required" in the performance of her job. Ford argues that since she cannot perform the substantial acts of her usual occupation she has sustained a 100 percent industrial loss of the use of her legs regardless of whether she made efforts to obtain other employment. Ms. Ford, however, defeated her own argument by working for six years after the injury. That fact established that Ms. Ford could work. We hold that the decision of the Commission is supported by substantial evidence and find no basis for reversal.

II. WHETHER THE FULL COMMISSION, AFFIRMED BY THE CIRCUIT COURT, FOLLOWED THE PROPER LEGAL STANDARD IN FINDING THAT THE APPELLANT DID NOT MAKE A REASONABLE EFFORT TO OBTAIN GAINFUL EMPLOYMENT AFTER SHE LEFT THE EMPLOY OF THE APPELLEE ON DECEMBER 31, 1996, AND BEFORE THE EVIDENTIARY HEARING ON APRIL 9, 1997.
¶ 11. According to the Mississippi Code, disability means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings." Miss. Code Ann. § 71-3-3(i) (Rev.1995). In determining whether a claimant has made reasonable efforts to find gainful employment, the facts of each case must be examined individually, because "we cannot ... delineate any hard and fast rule as to how many or exactly what type efforts a claimant must make in every case in order to establish `disability' within the purview of § 71-3-3(i)." Thompson v. Wells-Lamont Corp., 362 So.2d 638, 641 (Miss.1978). In Compere's Nursing Home v. Biddy, 243 So.2d 412, 414 (Miss.1971), and again in Sardis Luggage Company v. Wilson, 374 So.2d 826, 828 (Miss.1979), the Mississippi Supreme Court adopted the general rule for disability as stated in V. Dunn, MISSISSIPPI WORKERS' COMPENSATION § 72 (2d ed.1967):
`Disability' means incapacity because of injury to earn wages which the employee was receiving at the time of the injury in the same or other employment. If the injury prevents the employee from resuming his former trade, work or employment, this alone is not the test of disability to earn wages or the test of the degree of such disability, but the definition relates to loss of capacity in `the same or other employment,' and the meaning is that the employee, after his period of temporary total incapacity, must seek employment in another or different trade to earn his wages. Thus, when an employee is prevented from *1268 resuming his trade because of a developed allergy to the materials with which he is required to work, he must seek other employment and may not recover as for a permanent disability solely because of total incapacity to engage in the same or similar work.
¶ 12. In determining whether one made a reasonable effort to obtain employment in the same or other occupation, several factors may be relevant, including: the economic and industrial aspects of the local community, the jobs available in the community and surrounding area, the claimant's general educational background, including work skills, and the particular nature of the disability for which compensation is sought. Robinson, 523 So.2d at 331.
¶ 13. If a claimant makes a prima facie showing of reasonable efforts indicating there are not suitable jobs, the burden then shifts to the employer or insurer to show otherwise. Thompson, 362 So.2d at 640. The claimant has the burden of proof to make out a prima facie case for disability, after which the burden of proof shifts to the employer to rebut or refute the claimant's evidence. After the burden shifts, evidence indicating that suitable employment was available to claimant becomes relevant and admissible; therefore, the employer may present evidence showing that the claimant's efforts to obtain other employment were a mere sham, or less than reasonable, or without proper diligence. Id. Whether the claimant has made a prima facie case is a question of fact. This reminds us of our standard of review which requires us to defer to the finding of the Commission if there is substantial evidence to support the decision.
¶ 14. In the case at bar, none of the physicians reports alluded that Ms. Ford was permanently and totally disabled. Furthermore, the fact that Ms. Ford worked for six years after the injury refutes any claim that she is permanently disabled and unable to work. The fact that she voluntarily retired from her position together with the fact that she did not try to find another job for seven months after leaving True Temper support the administrative judge's and the Commission's decision that she did not make reasonable efforts to obtain gainful employment. Since there is substantial evidence to support the lower court's finding we must affirm.

III. WHETHER THE CIRCUIT COURT COMMITTED ERROR IN DENYING THE APPELLANT'S MOTION TO REMAND THE CASE TO THE FULL COMMISSION.
¶ 15. Again, we reiterate the standard by which we are bound. In workers compensation cases, the Workers Compensation Commission is the finder of facts and if those facts are based on substantial credible evidence, the reviewing court lacks power to disturb them, even though the evidence would not convince the court were the court the fact finder. Sibley, 699 So.2d at 1217; Oswalt, 625 So.2d at 772. Similarly, when the decision of the Commission is before the circuit court on intermediate appeal, that circuit court may not tamper with the findings of fact, where the findings are supported by a sufficient weight of the evidence. Roberts v. Junior Food Mart, 308 So.2d 232, 234-35 (Miss.1975). Where the circuit court reverses the Commission by simply supplanting its judgment for that of the Commission, without regard to whether the Commission's findings were substantiated by the weight of evidence, the circuit court commits error. Morris v. Lansdell's Frame Co., 547 So.2d 782, 785 (Miss.1989). Thus, since there was substantial evidence to support the Commission's decision by way of doctor's reports and the testimony of the claimant, the circuit court was not in error and we must affirm.
*1269 ¶ 16. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.