811 So.2d 250 (2001)
McCARTY FARMS, INC., a Wholly Owned Subsidiary of Tyson Foods, Inc., Self Insured, Appellant,
v.
Ruby KELLY, Appellee.
No. 2000-WC-00166-COA.
Court of Appeals of Mississippi.
January 9, 2001.
*252 Daniel M. Baker, Jackson, Chandra Thrash Lee, Attorney for Appellant.
John Hunter Stevens, Jackson, Attorney for Appellee.
EN BANC.
BRIDGES, J., for the Court:
¶ 1. This is a workers' compensation appeal from the Circuit Court of Warren County, Honorable Isadore W. Patrick, Jr. presiding. This case was originally heard by Administrative Judge Lott, who found Ruby Kelly sustained a 100% industrial loss to her right arm while in the course and scope of her employment. The administrative judge also found Kelly was temporarily totally disabled during the periods she was off work from April 10, 1995 to June 1, 1997, and that Kelly was entitled to permanent partial disability benefits for 200 weeks beginning June 1, 1997. McCarty filed a motion to reopen and vacate the order, and a second evidentiary hearing was held. The administrative judge entered an amended order which contained the same holdings as the previous order. McCarty appealed to the Full Commission citing error in the administrative judge's finding of 100% industrial disability to Kelly's right arm. Kelly responded by denying McCarty's claims and cross-appealed claiming the administrative judge erred in not awarding permanent total disability benefits for 450 weeks. The Full Commission affirmed the findings of the administrative judge, and McCarty appealed while Kelly cross-appealed to the circuit court. The Circuit Court of Warren County affirmed the holding of the Full Commission and McCarty comes now with these issues:
1. THE FINDING OF THE ADMINISTRATIVE JUDGE, THE FULL COMMISSION, AND THE CIRCUIT COURT THAT THE CLAIMANT SUFFERED A 100% INDUSTRIAL LOSS OF USE OF HER RIGHT ARM IS NOT BASED UPON SUBSTANTIAL CREDIBLE EVIDENCE.
2. THE FINDING OF THE ADMINISTRATIVE JUDGE, THE FULL COMMISSION, AND THE CIRCUIT COURT CONCERNING INDUSTRIAL LOSS OF USE CONTAINED ERROR IN FAILING TO GIVE PROPER WEIGHT TO EVIDENCE REGARDING AVAILABILITY OF JOBS, ABILITY TO DO WORK, AND THE EFFORTS TO RETURN CLAIMANT TO WORK.
3. THE CLAIMANT'S ARGUMENT THAT THE INJURY SHE SUSTAINED HAS LEFT HER TOTALLY PERMANENTLY DISABLED HAS NO EVIDENTIARY SUPPORT.
Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 2. Ruby Kelly worked for McCarty Farms from 1988 until 1997, when she resigned due to her injuries. She began work at McCarty as a meat sorter but was later promoted to the position of lead person. She was injured on April 10, 1995 when, while carrying a load of meat, she tore her rotator cuff. She testified that her job as lead person often required a great deal of lifting, including carrying around forty pound pails of meat. McCarty Farms claims the job of lead person is to delegate jobs and there should be no lifting involved, but the testimony of David Strong, Kelly's supervisor, stated they expected their lead people to do some lifting. McCarty claims Kelly should have delegated *253 the lifting of heavy boxes to other employees.
¶ 3. After reporting to the company nurse, Kelly was referred to Dr. Vohra on April 17, 1995. Dr. Vohra gave Kelly a MRI and discovered she had a torn rotator cuff. Kelly returned to work but soon began rehab after the injury occurred. Kelly continued to experience pain in her shoulder while working and was eventually asked to step down as a lead person.
¶ 4. On February 29, 1996, surgery was performed on Kelly's shoulder by Dr. Geissler. Kelly returned to work in April as a meat tester. However, Kelly then experienced swelling in her arms causing Dr. Geissler to recommend she cease working for three months. Dr. Geissler assigned Kelly a maximum improvement date of August 1, 1996, and on August 7, 1996, assigned her a ten percent permanent partial impairment rating. He also set certain weight limits Kelly should not lift with her arm.
¶ 5. Kelly returned to work and served in several jobs such as water drippings checker, shipping and receiving, and inventory and control. Kelly continued to have problems with her arm, and after a visit to Dr. Field, it was discovered Kelly had a bone spur. A second surgery was performed. Dr. Field assigned a maximum medical improvement date of June 1, 1997, and placed further lifting restrictions on her. After this surgery, Kelly went back to work at McCarty in the personnel department. She continued to have problems with her right arm and eventually resigned due to these problems.
¶ 6. Kelly testified that despite these problems she has continued to look for work, and stated in her testimony five places where she claims to have applied for jobs. Kelly has not worked since she quit McCarty Farms.
¶ 7. McCarty claims several of the places Kelly listed as places where she has attempted to find work have never heard of her and have no record of Kelly seeking employment. In addition, McCarty claims David Strong warned Kelly several times about lifting the pails of meat, informed Kelly that lifting was not a part of the job of leader person, and told Kelly to call on other workers to do such work.

DISCUSSION OF THE LAW

STANDARD OF PROOF
¶ 8. In looking at the proper standard to apply in this case, it is important to remember that the Workers' Compensation Commission is the ultimate finder of fact, and upon review this Court will apply a general deferential standard of review. Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123 (Miss.1992). The findings of the Commission will only be reversed where the findings are clearly erroneous and contrary to the overwhelming weight of the evidence. Alumax Extrusions v. Wright, 737 So.2d 416 (¶ 8) (Miss.1998); Nettles v. Gulf City Fisheries, Inc., 629 So.2d 554, 557 (Miss.1993). If there is substantial evidence supporting the findings of the commission, than this Court will not disturb those findings. Piggly Wiggly v. Houston, 464 So.2d 510, 512 (Miss.1985).

ANALYSIS

1. THE FINDING OF THE ADMINISTRATIVE JUDGE, THE FULL COMMISSION, AND THE CIRCUIT COURT THAT THE CLAIMANT SUFFERED A 100% INDUSTRIAL LOSS OF USE OF HER RIGHT ARM IS NOT BASED UPON SUBSTANTIAL CREDIBLE EVIDENCE.
¶ 9. In raising this issue, McCarty claims there was not enough evidence presented *254 to the administrative judge, Full Commission, and circuit court to uphold a finding of 100% industrial loss to Kelly's right arm. McCarty maintains the only loss or impairment to Kelly's shoulder supported by substantial evidence is the 10% impairment rating given to Kelly's shoulder by Dr. Geissler and the 6% impairment rating given to her shoulder by Dr. Fields. McCarty also contends Kelly may be able to prove some medical impairment, but she cannot prove a complete loss of wage earning capacity due to that medical impairment. In claiming this, McCarty cites the fact Kelly quit work at McCarty before she had reached maximum medical improvement and since then she has not worked. We do not find these arguments convincing.
¶ 10. In the McGowan case, the court set out the difference between industrial and functional loss. McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991). Functional disability relates to actual physical impairment while industrial disability is the functional disability as it affects claimant's ability to perform substantial acts required in his occupation. Id. at 166. The claimant bears the burden of proving industrial disability and must show medical impairment and a loss of wage-earning capacity resulting from the medical impairment. Id. The Commission must determine from the evidence whether a claimant's disability is total or partial for wage earning purposes. Id. at 167. The Commission may consider medical testimony and lay witness testimony in deciding the percentage of loss assigned to an injury, and the probative evidence of any witness's testimony is determined by the fact-finder. Id. The loss of wage earning capacity is crucial in determining whether the claimant has proven an industrial disability. In determining wage earning capacity, factors such as the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and other related circumstances should be considered. Id. To establish wage earning capacity a claimant must make reasonable efforts to get other employment. Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1248 (Miss.1991).
¶ 11. After reviewing the record, briefs, and the applicable law, this Court must uphold the findings of the lower court, Full Commission, and administrative law judge. Kelly succeeds in proving she suffered from a medical impairment by offering the impairment ratings given to her by Dr. Geissler and Dr. Fields. However, as stated above, to prove industrial disability Kelly must also prove a loss of wage earning capacity. McGowan, 586 So.2d at 167. Loss of wage earning capacity is a question of fact, and the Full Commission acts as fact finder in these type cases. Id. This Court will not overrule the findings of the Full Commission unless it determines those findings to be clearly erroneous and contrary to the overwhelming weight of the evidence. Alumax Extrusions, 737 So.2d at (¶ 8).
¶ 12. McCarty claims Kelly did not offer evidence substantial enough to support a loss of wage earning capacity. It is this Court's opinion, however, that Kelly did provide enough evidence to support a loss of wage earning capacity with regard to her ability to perform the duties of her job. Kelly's testimony reveals that after her injury she was unable to perform the duties of a lead person, such as lifting boxes, and she also states she was asked to step down from the position because her supervisors were not pleased with her work. McCarty claims lifting boxes is not a part of a lead person's job, and a lead person is supposed to delegate such duty to another employee. However, David *255 Strong, a personnel manager at McCarty, testified that delegating lifting is "[a]cceptable. It's not what we would expect but as far as acceptable, if they get the job done through delegation that's what we want them to do". This statement leads this Court to believe McCarty expects its lead people to be able to do some lifting as part of their job, and therefore lifting is a part of the job of lead person. Kelly has proven she is unable to do any lifting due to the lifting restrictions placed on her by her doctors. Because Kelly cannot do any lifting due to her injury, and lifting is a requirement in the job of lead person, this proves Kelly is unable to work in her former job. Inability to work is one of the considerations in determining whether a claimant has suffered a loss of wage earning capacity. Alumax Extrusions, 737 So.2d at (¶ 16). Kelly has proven her inability to work in her former job, and this supports a finding of loss of wage earning capacity.
¶ 13. In addition, Kelly outlined in her testimony how she moved from job to job around the McCarty factory. None of the jobs in which Kelly served after the injury were similar to the job of lead person, and in each one Kelly was unable to perform her duties without suffering from some sort of pain. This shows how Kelly's injury prevented her from performing in the jobs she had after the injury. Thus, Kelly suffered from an inability to work. Kelly's inability to work proves a loss of wage earning capacity because the injury prevented her from working and from earning a wage. In proving loss of wage earning capacity, the claimant is to prove a loss of capacity in the same or other employment. McGowan, 586 So.2d at 167. Kelly's inability to perform any of the jobs she served in after the injury proves a loss of capacity in "other employment" and because of this she succeeds in proving a loss of wage earning capacity.
¶ 14. One of the factors the Full Commission and this Court can consider in determining if there was a loss of wage earning capacity is failure to be hired elsewhere. McGowan, 586 So.2d at 167. McCarty claims Kelly's failure to find work after leaving McCarty prevents her from showing a loss of wage earning capacity, and to prove this they offered the testimony of three witnesses who represented businesses where Kelly claimed to have applied for work. Linda Peterson, personnel supervisor at Pinehaven Care Center in Clinton, and Diane Marie Adcock, a supervisor at Adcock Employment, both testified they checked their records and could find no record of Kelly or an application from Kelly. However, both witnesses testified it was possible Kelly's application could have been lost, and Adcock stated it was very likely due to turnovers in their personnel department. McCarty also called on Linda Palmer, a worker at Clinton Health Rehabilitation Center, who testified to offering Kelly a job which Kelly refused. Palmer testified to offering Kelly a part-time job even though Kelly applied for a full-time job. Palmer also testified had she known of Kelly's doctor restrictions she would not have offered her the job. McCarty made no mention of the other places with which Kelly testified to applying. These include the Mississippi Employment Office, North-park Mall, Comfort Inn, Kroger, Whitfield, and various sitting ads found in the paper.
¶ 15. The testimony McCarty offered above does not disprove a loss of wage earning capacity. With two of the witnesses, it was entirely possible Kelly's applications could have been lost, and the other stated she would not have hired Kelly if she had known of Kelly's condition. Palmer's testimony actually proves Kelly *256 has suffered a loss in wage earning capacity because it proves that due to her condition some businesses would not hire her. Also, McCarty made no effort to disprove Kelly's testimony regarding the other places where she had tried to find work. This evidence supports Kelly's efforts to find employment. It must be shown that the claimant has made an effort to find employment to prove a loss of wage earning capacity. Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1249 (Miss.1991). Kelly has done so here, and the evidence here supports affirming the findings of the lower court.
¶ 16. McCarty raises the fact that Kelly quit her job at McCarty before reaching maximum medical improvement. McCarty claims this acts as a barrier which hinders any analysis of Kelly's inability to work. This argument ignores all of the evidence of loss of wage earning capacity which occurred in Kelly's move from job to job at McCarty. That she could not find a job at McCarty which was at the level of lead person and one in which her injury did not continue to interfere with her ability to do work proves Kelly is unable to work. We find McCarty's point without merit.
¶ 17. In conclusion, taking the evidence as it is, and looking at this case through the deferential standard of review that should be applied, this Court finds nothing erroneous about the findings of the Full Commission. This Court may not interfere with the holdings of the Full Commission when substantial credible evidence supports the Commission's holdings. Smith, 607 So.2d at 1123. This Court finds the evidence substantially and credibly supports the Commissions findings, that there is nothing erroneous about those findings, and for these reasons we affirm.

2. THE FINDING OF THE ADMINISTRATIVE JUDGE, THE FULL COMMISSION, AND THE CIRCUIT COURT CONCERNING INDUSTRIAL LOSS OF USE CONTAINED ERROR IN FAILING TO GIVE PROPER WEIGHT TO EVIDENCE REGARDING AVAILABILITY OF JOBS, ABILITY TO DO WORK, AND THE EFFORTS TO RETURN CLAIMANT TO WORK.
¶ 18. In raising this issue, McCarty claims the Full Commission did not grant proper weight to the evidence it presented in regard to the different factors which are considered in proving a loss of wage earning capacity. Specifically, McCarty claims the Full Commission did not give proper weight to the testimony of the three witnesses McCarty presented in efforts to prove that jobs were available, Kelly had made no attempt at securing future employment, and Kelly was able to work. In doing so, McCarty has drawn similarities between this case and the case of Ford v. Emhart, Incorporated, 755 So.2d 1263 (Miss.Ct.App.2000), and has requested this Court to present a similar verdict in this case. This Court, again, does not find these arguments convincing.
¶ 19. None of the testimony offered by McCarty's three witnesses conclusively disproves Kelly's efforts to find employment, prove jobs were available, or prove Kelly could work. Peterson and Adcock both testified they were unable to find a record of Kelly applying, but they also testified it was possible her application could have been lost. This does not conclusively prove Kelly made no efforts to secure employment because the application could have been lost and McCarty failed to mention the other places where Kelly testified she applied, such as the Mississippi Employment Office, Northpark Mall, Comfort Inn, Kroger, and Whitfield. Palmer *257 testified she offered Kelly a job, but that had she known of Kelly's health problems, she would not have hired her. This testimony does two things. First, this testimony actually helps show how Kelly's impairment harmed her wage earning capacity. Palmer stated Kelly's impairment would have prevented her from getting the job, and this shows how her impairment would interfere with her ability to work. The second thing it does is prove how Kelly's impairment affects the availability of jobs. This was the only testimony relating to availability of jobs. It shows how Kelly's impairment could cut her out of the running on some jobs because she would be unable to perform the job requirements due to her disability. After looking at this evidence, it is clear Kelly made attempts to find employment and was unable to. This causes this Court to uphold the findings of the Full Commission and hold that Kelly has succeeded in showing a loss of wage earning capacity.
¶ 20. McCarty claims this case should be treated similarly to the Ford case, because in the Ford case the claimant willingly retired her position with her employer. Ford, 755 So.2d at (¶ 14). What McCarty fails to state in its brief is that in the Ford case the claimant's efforts to find a job were less than reasonable because she waited seven months after leaving her job to go and find another job. Id. at (¶ 14). That is not the case here. There was no indication in the record that Kelly waited for a long period of time to start looking for a job. McCarty tried to prove Kelly's efforts to find a job were a mere sham, but all it succeeded in proving is that two of the places where Kelly might have applied could have lost her application, and one of the places would not have hired her if they knew of her condition. McCarty fails to mention the five other places Kelly claimed to have applied. As there is no extended time period between Kelly retiring from her job at McCarty, and because McCarty has failed to prove Kelly's efforts to find employment were a sham, this Court finds no reason to treat this case similarly to the Ford case.
¶ 21. After considering the evidence presented, and the deferential standard of review, this Court must find that the Full Commission, in its role as fact finder, was correct in finding a loss of wage earning capacity. Since the Commission made no erroneous findings, we affirm as to this issue.

3. THE CLAIMANT'S ARGUMENT THAT THE INJURY SHE SUSTAINED HAS LEFT HER TOTALLY PERMANENTLY DISABLED HAS NO EVIDENTIARY SUPPORT.
¶ 22. This issue was originally brought on cross-appeal by the claimant. Kelly made no such cross-appeal to this Court. McCarty mentions this topic to insure that it has all its bases covered; however, it is Kelly who should have raised this issue as a cross-appeal. Our supreme court has consistently held we have no jurisdiction of an appeal where the required notice is not timely filed. Bank of Edwards v. Cassity Auto Sales, Inc., 599 So.2d 579 (Miss.1992); Duncan v. St. Romain, 569 So.2d 687 (Miss.1990); Tandy Electronics, Inc. v. Fletcher, 554 So.2d 308 (Miss.1989). Kelly has failed to preserve this issue for appeal, and according to the Mississippi Rules of Appellate Procedure Rule 4(a), this Court does not have jurisdiction to hear this issue. M.R.A.P. 4(a).
¶ 23. In conclusion, we find the holdings of the administrative judge, the Full Commission, and the circuit court were not erroneous, but were based on sound fact. For this reason, we affirm the holdings of the lower court.
*258 ¶ 24. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, P.J., IRVING, MYERS, PAYNE, and THOMAS, JJ., CONCUR. McMILLIN, C.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J. LEE AND CHANDLER, JJ., NOT PARTICIPATING.
McMILLIN, C.J., concurring:
¶ 25. I concur in the result reached by the majority. However, I reach that result solely on the evidence regarding the effect of Kelly's injury on her ability to perform the substantial acts of her usual employment, rather than a more general assessment of her diminished wage earning capacity as discussed by the majority.
¶ 26. It is my view that there was sufficient evidence to support a finding that, when viewed in the context of what was required of Kelly in performing the range of duties that could reasonably be said to encompass her usual employment, the medical disability to her arm and shoulder, though only partial from a functional standpoint, actually resulted in a total industrial loss of use of her arm. This finding would, in my view, entitle Kelly to 200 weeks of compensation under Section 71-3-17(c)(22). Compensation determined under that section does not require exploration of a general diminishment in wage earning capacity that is essential to set the level of compensation due under Section 71-3-17(c)(25).
¶ 27. In reaching this conclusion, I have relied heavily upon analysis of the pertinent issues found in the well-reasoned concurrence of my colleague, Presiding Judge Southwick, in the case of Meridian Professional Baseball Club v. Jensen, to which I hereby make reference. Meridian Prof'l Baseball Club v. Jensen, 1999-WC-02093-COA, 2000 WL 1499455, ___ So.2d ___ (Miss.Ct.App. Oct. 10, 2000).
SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.