642 So.2d 375 (1994)
Frank T. DeLAUGHTER
v.
SOUTH CENTRAL TRACTOR PARTS and Insurance Company of North America.
No. 91-CC-01048.
Supreme Court of Mississippi.
July 21, 1994.
Rehearing Denied September 29, 1994.
*376 G. Kenner Ellis, Jr., Greenville, for appellant.
Joseph T. Wilkins, III, Diane V. Pradat, McCoy Wilkins Stephens & Tipton, Jackson, for appellees.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
McRAE, Justice, for the Court:
This appeal arises from an October 14, 1991, order of the Washington County Circuit Court affirming the findings of the Mississippi Workers' Compensation Commission that Frank DeLaughter sustained a permanent partial disability compensable at the rate of $25.00 per week, reducing a $100.00 per week award established by the Administrative Judge. We affirm the award of temporary disability benefits, payment of necessary medical expenses and penalties. However, finding that certain of the Commission's findings are unsupported, we reverse and remand for redetermination of DeLaughter's loss of wage earning capacity.

FACTS
Frank DeLaughter was employed by South Central Tractor Parts, a farm implements salvage dealer in Leland, Mississippi. He had worked for South Central since 1984 as a yardman and a stockman, tearing down old tractors and other equipment, steam cleaning parts, and placing them on storage racks. DeLaughter, who was thirty-five years old when he was injured, has only an eighth grade education and has worked always as a semi-skilled laborer.
On September 24, 1987, DeLaughter sustained a compensable injury to his back when he fell from a six-foot-high "bolder rack." He was treated and released at the Delta Medical Center, but sought further treatment from his family doctor for pain in his right shoulder and both "flanks," the area his physician described as spanning "[l]aterally, between the rib cage and wings of the pelvis." He returned to work shortly thereafter.
Although he complained of back pain to his family and co-workers, DeLaughter continued working, often putting in considerable overtime, until April 2, 1988. After taking a two week vacation in March, 1988, DeLaughter returned to work for several days, and then, without notifying his supervisor, left.
In April, 1988, DeLaughter sought further treatment from doctors in Greenville and Jackson. Still complaining of back pain, DeLaughter then went to see Dr. Albert Azordegan, a Jackson neurosurgeon, on July 15, 1988. Dr. Azordegan prescribed medicine for pain and saw DeLaughter again on July 29 and August 8. The August evaluation revealed an objective neurological deficit, leading Dr. Azordegan to admit DeLaughter to the hospital on August 10. Although a myelogram taken at that time was normal, Dr. Azordegan diagnosed his condition as *377 "traumatic lumbosacral spine the nerve root irritation." On September 12, 1988, DeLaughter was released for light work. He again returned to the doctor on November 29, complaining of "generalized soreness." At that time, Dr. Azordegan found that DeLaughter had reached maximum improvement and again released him to work. He advised DeLaughter to avoid excessive bending and not to lift anything in excess of forty (40) pounds.
Based on his treatment and evaluations of DeLaughter, Dr. Azordegan opined that he sustained a four percent (4%) partial disability. Dr. Ward McRaney, an orthopedic surgeon in Jackson who performed an "independent medical evaluation" on DeLaughter on November 21, 1988, found, however, that the claimant had "subjective symptoms of pain which were not substantiated by demonstrable pathology" and had suffered no permanent impairment from his injury.
DeLaughter went back to work at South Central in late November or early December, 1988, and was assigned light work. After a week, he returned to his former job as a stockman. A co-worker, Walter Mister, was assigned to assist DeLaughter in lifting anything weighing more than forty pounds.
DeLaughter left South Central in February, 1989. He testified that he was fired or "terminated," whereas Bruce Clifft, then manager of the business, stated that he had quit. DeLaughter had secured another job at the "Double Quick" convenience store, operating the cash register, restocking shelves, making biscuits and keeping the store clean. He left "Double Quick" after only two or three weeks, stating that he could not do the work because he was in pain. Pat Horne, the "Double Quick" manager, testified that he performed the job poorly, especially having difficulties with running the cash register and keeping the store clean. After leaving "Double Quick," DeLaughter went to work for a cabinet shop, building and sanding cabinets. He left shortly thereafter, again complaining of back pain.
DeLaughter testified that he attempted to find other work, contacting between 125 and 130 businesses. He stated that he had applied in person at some thirteen to fifteen businesses. Despite these efforts, he was unable to find other employment. His only income has been derived from making wooden toys to sell at flea markets and selling Mexican pottery by the side of the road.
DeLaughter initially filed a motion to controvert with the Mississippi Workmen's Compensation Commission on April 8, 1988. The Administrative Judge entered an order on June 13, 1990, finding that DeLaughter was entitled to temporary total disability benefits in the amount of $140.00 per week for the period beginning September 24, 1987 and ending October 2, 1987, as well as from April 4 through September 12, 1988. He further ordered South Central to pay permanent partial disability payments of $100.00 per week for 450 weeks, beginning September 12, 1988, necessary and reasonable medical services and supplies, and penalties pursuant to Miss. Code Ann. § 71-3-37.
South Central filed its petition of appeal from the Administrative Judge's order on June 25, 1990. A two-member panel of the Workers' Compensation Commission heard arguments on the case on December 17, 1990. The Commission entered an order on February 8, 1991. Finding that DeLaughter suffered only minimal industrial incapacity as a result of his injury, the Commission affirmed the Administrative Judge's order, but reduced the permanent partial disability benefit payments to $25.00 per week. DeLaughter perfected his appeal to the Washington County Circuit Court, which affirmed the Commission's order. He now appeals to this Court.

STANDARD OF REVIEW
Upon review, this Court is bound by those findings and orders of the Workers' Compensation Commission which are supported by substantial evidence. Mitchell Buick, Pontiac and Equipment Co. v. Cash, 592 So.2d 978, 980 (Miss. 1991); Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss. 1990); Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988). "This is so, even though the evidence would convince this Court otherwise, were we the fact finder." Fought, 523 So.2d at 317. We *378 will overturn decisions of the Commission only where there is an error of law or a finding unsupported by the evidence. Walker Manufacturing Co. v. Cantrell, 577 So.2d 1243, 1246-1247 (Miss. 1991). Further, we have held that "the circuit court is limited in its review and must defer to the findings of the Commission unless the Commission commits prejudicial error." Lanterman v. Roadway Express, Inc., 608 So.2d 1340, 1345 (Miss. 1992); Smith v. Jackson Construction Co., 607 So.2d 1119, 1125 (Miss. 1992); Walker Manufacturing, 577 So.2d at 1247.

ARGUMENTS AND DISCUSSION OF THE LAW
In its February 8, 1991 order, the Commission found that DeLaughter had suffered "only minimal industrial incapacity," stating:
The Commission thus finds that DeLaughter suffered a permanent partial impairment of four percent as a result of the injury of September 24, 1987. The Commission finds, however, that the claimant has not presented sufficient evidence that he has sustained more than a minimum loss of wage earning capacity as a result of the injury. The claimant apparently quit the job at South Central tractor parts because of pain when lifting heavy parts. But company policy dictated that no one lift more than forty pounds by himself. Dr. Azordegan assigned only a four percent disability and restrictions against excessive bending and heavy lifting of more than forty pounds.
It further found that:
Dr. Azordegan restricted DeLaughter to lifting no more than forty pounds. Company policy at South Central Tractor Parts dictates that no one lift more than forty pounds alone. The restrictions do not conflict with the job requirements.
DeLaughter asserts that the Commission erred in so finding and in reducing his permanent partial disability benefits to $25.00 per week. He primarily contends that the Commission's findings are based on the erroneous proposition that South Central had a policy prohibiting any employee from lifting more than forty pounds without assistance. South Central skirts around the policy issue, maintaining that the Commission's findings are supported by substantial evidence. It further asserts that DeLaughter's job was always available to him and within the physical limits established by Dr. Azordegan.
Both claimant and employer hotly dispute much of the evidence in this case: the extent of DeLaughter's incapacity; his ability to continue working after the accident; whether he quit or was fired; and the availability of medical benefits through his employer. In workers' compensation cases, the Commission is the ultimate finder of fact. Natchez Equipment Co., Inc. v. Gibbs, 623 So.2d 270, 273 (Miss. 1993); Walker Manufacturing Co. v. Cantrell, 577 So.2d 1243, 1246 (Miss. 1991); Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss. 1990). This Court generally will give great deference to the Commission's decision, regardless of the administrative judge's ruling. Lanterman v. Roadway Express, Inc., 608 So.2d 1340, 1345 (Miss. 1992). However, as the standards of review, supra, indicate, where the findings of the Commission are not supported by substantial evidence, we will not hesitate to reverse.
It is apparent that the Commission based its decision largely on the premise that, although Dr. Azordegan restricted DeLaughter to lifting less than forty pounds, South Central had a policy requiring workers to seek assistance when lifting more than forty pounds. Thus, it appears to interpolate from these "facts" that DeLaughter's wage earning capacity could not have been diminished by his accident. The Commission states three times in its opinion that South Central had a policy regarding weight limits. Discussing DeLaughter's return to work in November, 1988, the Commission expressly found:
A coworker was told to assist him with heavy lifting. As a matter of fact, a supervisor at the parts company testified that it was company policy that no employee should lift more than forty pounds without asking assistance from a coworker.
The evidence in the record simply does not substantiate this finding. Bruce Brawner, retained by South Central to make a vocational *379 assessment of DeLaughter's abilities, stated in his January 11, 1990 "Final Vocational Rehabilitation Report" that:
It was identified that there are some parts that weighed 100-200 pounds, but I was advised by Mr. Smith that it is a policy that no one lift over 40 pounds, and that if a part weighing over that amount was required to be moved or stocked, that the employee should either use a forklift, moved or stocked, that the employee should either use a forklift, the hydraulic lift, or call upon another individual to do the heavy lifting.
The record contains no evidence of this alleged policy. Carl Smith, manager of South Central and assistant manager at the time DeLaughter was injured, testified regarding company policies for overtime and doctor's excuses. However, there is no testimony about company policies on heavy lifting. He indicated only that because of the restrictions imposed by his doctor, DeLaughter was instructed to seek assistance with heavy lifting and that Bruce Clifft assigned someone to assist him. Clifft, manager at the time DeLaughter was injured, discussed the various forklifts and other machinery available to assist workers with heavy items, but gave no indication in his deposition that South Central had any specific policies regarding heavy lifting. He stated that he assigned another worker, Walter Mister, to assist DeLaughter and to see that he did not lift anything weighing more than forty pounds. Neither Mister nor another co-worker, Randolph Ware, made any reference to a company policy restricting weight limits for lifting.
The argument could be made that the Commission's finding was based on Dr. Azordegan's opinion that DeLaughter had suffered a four percent (4%) permanent partial disability. Summing up the extent of DeLaughter's disability in his deposition, Dr. Azordegan stated, "As far as anatomophysiological [sic] 4 percent, but because he cannot work [the] same job, this is up to you, up to him." We have articulated the distinction between "medical" disability and "industrial" disability as follows:
Generally, "medical" disability is the equivalent of a functional disability and relates to actual physical impairment. "Industrial" disability is the functional or medical disability as it affects the claimant's ability to perform the duties of employment.
Robinson v. Packard Electric Division, General Motors Corp., 523 So.2d 329, 331 (Miss. 1988). Further, we have held that "[g]enerally, predicating an award on medical or functional disability rather than upon a determination of the extent of loss of industrial use or impairment of claimant's wage earning capacity is error." Smith v. Jackson Construction Co., 607 So.2d 1119, 1125 (Miss. 1992). This is consistent with our definition of "disability" as the "incapacity to earn the wages which the employee was receiving at the time of the injury in the same or other employment." Jordan v. Hercules, Inc., 600 So.2d 179, 183 (Miss. 1992). In determining loss of wage earning capacity, we consider factors such as "the amount of training and education which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances." McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss. 1991). Thus, "determination should be made only after considering the evidence as a whole." Id. It is undisputed that DeLaughter has only an eight grade education. Donald Drane, head of the Greenville office of the Mississippi Employment Security Commission, stated in his deposition that based on DeLaughter's limited education, his forty pound lifting restriction and the above-average unemployment figures in Washington County and the surrounding area, his prospects for employment were rather bleak. Considering the efforts DeLaughter made to find other employment and his inability to keep a job after leaving South Central because of his physical and educational limitations, his prognosis seems accurate.
We are reminded that workers' compensation law is to be liberally and broadly construed, resolving doubtful cases in favor of compensation so that the beneficent purposes of the act may be accomplished. Marshall Durbin Companies v. Warren, 633 So.2d 1006, 1010 (Miss. 1994); General Electric Co. v. McKinnon, 507 So.2d 363, 367 (Miss. 1987); Barham v. Klumb Forest Products *380 Center, Inc., 453 So.2d 1300, 1304 (Miss. 1984). From the Commission's interpretation of the evidence, this evidently was not done. Moreover, there is a lack of evidence to support the Commission's findings, particularly those regarding South Central's alleged policy requiring workers to seek assistance when lifting parts weighing more than forty pounds. Accordingly, we reverse and remand to the Commission for a redetermination of the extent of DeLaughter's permanent loss of wage earning capacity. The awards of temporary disability benefits, necessary medical expenses, and penalties, however, are affirmed.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED TO THE WORKERS' COMPENSATION COMMISSION FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.