LEE, J.,
for the Court:
¶ 1. Winters injured her back while working for her employer, Choctaw Maid Farms, Inc., when she attempted to lift weight totaling approximately seventy pounds. Choctaw Maid compensated Winters for temporary total disability; however, it denied compensation for permanent disability. The administrative law judge affirmed the denial of benefits. Winters appealed to the Mississippi Workers’ Compensation Commission. The Commission affirmed the judgment rendered by the administrative judge which denied permanent disability benefits. Winters then appealed the judgment of the Commission to the Circuit Court of Leake County. The trial judge affirmed the decision of the Commission. Feeling aggrieved by this decision, Winters filed a timely appeal to this Court and presents the following issue whether the circuit court erred in affirming the decision of the Mississippi Workers’ Compensation Commission which held that Winters had failed to sustain her burden of proof and establish that she suffered from a permanent loss of wage earning capacity as a result of the subject work injury.
FACTS
¶ 2. On May 1, 1997, Winters sustained a compensable back and leg injury in the course and scope of employment \vhile performing the duties of a lead-person position at Choctaw Maid. Beginning in June of 1997, Winters received medical treatment from Dr. Alexandre Solomon, neurosurgeon with the Methodist Neuroscience Associates. Dr. Solomon diagnosed Winters with herniated nucleus pulposus (HNP) at the L5-S1 level, left and central. Dr. Solomon performed a hemi-laminoto-my with the excision of the HNP on July 10, 1997. As a result of the work-related injury, Winters received workers’ compensation benefits.
¶ 3. Choctaw Maid paid temporary disability and medical benefits for the injury. It was stipulated at the hearing before the administrative law judge that Winters had reached maximum medical improvement and was released by Dr. Solomon to return to work on September 15,1997.
¶ 4. Winters returned to work on September 15, 1997 with a limitation on lifting no more than twenty-five pounds and no repeat bending as prescribed by Dr. Solomon in the clinic note dated September 8, 1997. Upon Winters return to work, she was assigned a position in the cut-up control room marking labels. Additionally, this Court notes that initially Dr. Solomon had prescribed the use of a pillow by Winters to assist in resting her back; however, Winters testified before the administrative law judge., that she was unable to use the pillow because she had not been furnished a chair. Next, Winters was assigned to a chiller-check position; however, because of the amount of walking involved in this position it caused physical discomfort to her back due to her prior work-related *158 injuries. In February 1998, Dr. Solomon prescribed a back brace and restricted Winters to twenty percent walking during working hours. Additionally, Winters testified that she stamped boxes but this position involved bending which caused back discomfort, and she was repositioned. Finally, Winters was assigned a weight-checker position which allowed her to sit and rest periodically. Winters was still positioned as a weight-checker at the time of the hearing before the administrative law judge. Winters testified that as a weight-checker she did not have to place the weight on the scales because other workers did this task; however, she believed the other weight-checkers placed the weight on the scales themselves. Ultimately, Dr. Solomon assigned Winters with a permanent medical impairment rating of 8-10 percent to her body as a whole.
¶ 5. Conflicting evidence was introduced relative to Winters current wages; however, it was agreed by the parties that she was making more per hour post-injury than pre-injury. Some testimony reflected that it was currently $6.80 an hour and other testimony showed that Winters was receiving $6.90 an hour in the weight-checker position. Prior to her injury she was receiving $6.70 an hour. Regardless, Winters and Choctaw Maid stipulated that Claimant’s average weekly wage on the date of the work injury was $327.74 and post-injury Winters was earning $337.25. It is noted that the increase in wages was a general plant wide increase. Winters continues to work overtime; however, the testimony does not reflect that an overall increase in wages could be contributed to a significant increase in post-injury overtime. Winters testified that during her employment with Choctaw Maid she had no real occasion to do over time, and that her work days were usually eight or nine hours a day.
¶ 6. Ms. Regina Mooney, Choctaw Maid’s employer’s health and safety administrator, assisted Winters in locating a post-injury job at the plant that was suitable for her medical restrictions. Mooney testified that no jobs were created for Winters and that other employees retain the position of weight-checker.
¶ 7. The administrative law judge addressed the aforementioned information in his opinion dated October 6, 1998. Ultimately, the administrative law judge held that Winters had not offered any evidence to rebut the presumption that the post-injury wage increase she received was not reliable in determining loss of wage earning capacity; therefore, Winters had not suffered a loss of wage earning capacity and was not entitled to permanent disability benefits. The Mississippi Workers’ Compensation Commission affirmed the holding of the administrative law judge. On February 8, 1999, Winters appealed the decision of the Commission to the Circuit Court of Leake County. Again, the decision was affirmed.
DISCUSSION
I. WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE DECISION OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION WHICH HELD THAT WINTERS HAD FAILED TO SUSTAIN HER BURDEN OF PROOF AND ESTABLISH THAT SHE SUFFERED FROM A PERMANENT LOSS OF WAGE EARNING CAPACITY AS A RESULT OF THE SUBJECT WORK INJURY.
¶ 8. The standard of review utilized by this Court when considering an appeal of a decision of the Workers’ Compensation Commission is well settled. The Mississippi Supreme Court has stated that “[t]he findings and order of the Workers’ Com *159 pensation Commission are binding on this Court so long as they are ‘supported by substantial evidence.’ ” Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994) (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). An appellate court is bound even though the evidence would convince that court otherwise if it were instead the ultimate fact finder. Barnes v. Jones Lumber Co., 637 So.2d 867, 869 (Miss.1994). This Court will reverse only where a Commission order is clearly erroneous and contrary to the weight of the credible evidence. Vance, 641 So.2d at 1180; see also Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994). “This Court will overturn a Commission decision only for an error of law, or an unsupportable finding of fact.” Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991) (citations omitted). Therefore, this Court will not overturn a Commission decision unless it finds that the Commission’s decision was arbitrary and capricious. Id.; see also Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1247 (Miss.1991) (stating that where the court finds credible evidence supporting a Commission decision, it cannot interfere with that decision any more than with a case from any other administrative body). This Court believes that the administrative law judge and the Full Commission correctly applied the law. This Court is not of the opinion that the administrative law judge or the Full Commission abused their discretion in the fact finding process. Thus, we uphold their decisions.
¶ 9. Winters argues that although the workers’ compensation commission is the trier of fact, that where the facts have been incorrectly interpreted and are not supported by substantial evidence in the record, the appellate court should reverse. Winters contends that the commission erred in affirming the decision of the administrative law judge relative to finding that she had not established a loss of wage earning capacity and was not entitled to permanent disability benefits.
¶ 10. While this Court is sympathetic for the individual who suffers from a permanent medical impairment due to a work related injury, nevertheless, under workers’ compensation law the fact that a permanent medical impairment exists does not always equal compensation. Under Miss.Code Ann. § 71-3-3© (Rev.1995) of the Workers’s Compensation Act it reads as follows: “Disability means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” Under this statute the definition of “disability” does not pertain to an actual physical disability in a medical context as one might envision, but refers to the claimant’s capacity to perform the duties of employment due to a work related injury. See Barnes v. Jones Lumber Co., 637 So.2d 867, 869 (Miss.1994) (citing Robinson v. Packard Elec. Div., General Motors Corp., 523 So.2d 329, 331 (Miss.1988)). Therefore, under workers’ compensation law a distinction is made between medical disability which relates to physical impairment and what is referred to as an “industrial” disability which affects the claimant’s ability to perform the duties of employment for the purpose of compensation. Robinson, 523 So.2d at 331. The claimant bears the burden to prove an “industrial” disability under workers’ compensation law. Id. “If the claimant successfully establishes a disability and the injury suffered is not specifically scheduled by the Workers’ Compensation statute [Miss. Code Ann. § 71-3-17 (Rev.1995)], the claimant’s disability is measured by loss of wage earning capacity.” Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 828 (Miss. *160 1991). In other words, for the claimant to successfully prove industrial disability she must meet a two pronged test and establish not only medical impairment, but also that the medical impairment results in a loss of wage earning capacity. Robinson, 528 So.2d at 331.
¶ 11. Under the “loss of wage earning capacity” guideline, it must be determined whether the claimant can obtain employment at the same rate of pay as she earned before her injury, and if she cannot, she is likely entitled to compensation benefits. Lanterman v. Roadway Exp., Inc., 608 So.2d 1340 (Miss.1992) (involving a claimant who returned to work and resumed daily work activities and failed to show any loss of wage earning, capacity; therefore, he was not entitled to any benefits.)
¶ 12. When we determine whether there has been a loss of wage earning capacity we review such factors as “the amount of training and education which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.” DeLaughter v. South Cent. Tractor Parts, 642 So.2d 375, 379 (Miss.1994) (citations omitted). In the case at bar, this Court does not have to review whether Winters has been able to obtain employment post-injury, because she is still employed with Choctaw Maid; therefore, we must strictly review the record as it pertains to whether Winters established an actual loss of wages as a result of her work related injury. Testimony given before the administrative law judge disclosed that due to a wage agreement between Choctaw Maid and the AFL-CIO, Winters was receiving $6.70 pre-injury and approximately $6.80 post-injury. Winters’s average weekly pre-in-jury wages were $327.74, and her post-injury wages totaled $337.25. The fact that Winters earned higher wages after her injury is strong evidence of the non-impairment of her earning capacity; however, in Spann v. Wal-Mart Stores, Inc., 700 So.2d 308, 313 (Miss.1997), the Mississippi Supreme Court citing General Electric Co. v. McKinnon, 507 So.2d 363, 365 (Miss.1987) stated as follows:
The statute has been construed by this Court to mean that post-injury earnings equal to or in excess of pre-injury earnings are strong evidence of non-impairment of earning capacity, but that the presumption arising therefrom may be rebutted by evidence on the part of the claimant that the post-injury earnings are unreliable due to: increase in general wage levels since the time of the accident, claimant’s own greater maturity and training, longer hours worked by claimant after the accident, payment of wages disproportionate to capacity out of sympathy to claimant, and the temporary and unpredictable characteristics of post injury earnings.
Spann, 700 So.2d at 313 (emphasis in original). Hence, a determination on loss of wage earning capacity should be made only after considering all of the evidence. DeLaughter v. South Cent. Tractor Parts, 642 So.2d 375, 379 (Miss.1994). Winters was assigned a permanent medical impairment rating of 8-10 percent to the body as a whole by Dr. Solomon; however, Winters failed to rebut the presumption of “non-impairment of earning capacity.”
¶ 13. Winters testified that at the time of her injury she was attempting to acquire a new position, and that she thought that it would have paid higher wages than her current salary; nevertheless, this is not relevant under our law. What is of relevance to this Court is whether the record establishes a loss of wage earning capacity between her actual wages pre-injury and those she received post-injury.
*161 ¶ 14. Winters was receiving a rate of pay that was equivalent to her pre-injury wages. Testimony was rendered by Mooney that Winters had received a raise which applied across the board to employees at Choctaw Maid, and while this is one factor to be considered in rebutting the presumption of non-impairment of wages, in this case it is not sufficient. The pay scale in the wage agreement provided by the union was applicable at the time of Winters’s injuries. Additionally, there was no evidence presented that showed, but for the possible union involvement, she would have received wages below those she was receiving pre-injury. This Court also rules that since the raise was due to union involvement and applied to employees across the board, it negates the idea that the wages were given out of sympathy. Additionally, there was no testimony that established that Winters’s slightly increased wages were due to her performing longer work hours (i.e., overtime) post-injury than those hours performed pre-injury. Winters testified that since she had been employed with Choctaw Maid she had had no real occasion to do overtime and usually worked an eight to nine hour day. Winters further explained her duties while employed at Choctaw Maid.
¶ 15. The record reveals that while initially Winters experienced some difficulty and restrictions in performing certain tasks upon returning to her employment with Choctaw Maid, there were at least two positions she felt she could perform post-injury as of the date of the hearing before the administrative law judge. One was her former job in the cut-up control room, assisting with labels, and the other was her current job as a weight-checker. Winters testified that as a weight-checker she was not actually putting weight on the scales, and although she believed that the other weight-checkers did, we do not find this evidence, when considered with all the other facts, to be substantial enough to find that the Workers’ Compensation Commission’s decision was arbitrary and capricious. Additionally, there was no testimony that indicated that the job Winters currently held as weight-checker was temporary. In fact, Winters testified that she thought she would physically be able to continue performing the job as weight-checker, and she had not scheduled any additional visits with Dr. Solomon. The record also disclosed that the last time Winters had to leave work early due to pain from her work related injuries was in October of 1997, approximately eight months prior to the hearing before the administrative law judge. Regina Mooney, Health and Safety Administrator for Choctaw Maid, also testified that none of the positions held by Winters, including her current weight-checker position, was specifically created to accommodate Winters’s physical restrictions. Mooney testified that another employee named Ann held the weight-checker position on the night shift. Mooney also explained that since Winters had initially returned to work in September she had “very good attendance,” and Winters’s supervisors were “very pleased with her performance.” Mooney further explained that if Winters’s current performance was maintained, that to her knowledge, Winters was in no danger of being terminated or suspended by the company. It is also worth noting that Mooney testified that even if the position of weight-checker were eliminated, there were hundreds of jobs in the plant that would meet Winters’s physical restrictions.
¶ 16. After a review of the record, this Court determines that the Commission’s decision was not based on an error of law or an unsupportable finding of fact. Therefore, we conclude that the decision of the Mississippi Workers’ Compensation Commission was supported by substantial *162 evidence and affirm its decision regarding the denial of permanent disability benefits based on the failure of Winters to prove a loss of wage earning capacity.
¶ 17. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.