CARLTON, J.,
for the Court:
¶ 1. Barry L. Gregg suffered a work-related injury during the course and scope of his employment with Natchez Trace Electric Power Association (Natchez Trace). The Mississippi Workers’ Compensation Commission (Commission) adopted the administrative law judge’s findings and award of temporary total disability benefits in the amount of $341.11 per week commencing on July 21, 2004, and concluding on May 2, 2006. The Commission’s decision was affirmed by the Webster County Circuit Court. At issue on appeal is whether the circuit court erred in affirming the Commission’s denial of permanent disability benefits based on Gregg’s failure to prove a loss of wage-earning capacity. Finding no error, we affirm.
*491 FACTS
¶ 2. On July 21, 2004, Gregg, a serviceman for Natchez Trace, injured his back on the job while lifting a tool belt. Gregg received medical treatment for his back injury, including lower-back surgery. Gregg’s treating physician ultimately released him to return to work on December 15, 2005, with a ten percent anatomical disability rating and permanent climbing restriction. Gregg stated that due to his climbing restriction, he was unable to earn “on call” overtime compensation for the service calls.
¶ 8. As a serviceman, Gregg’s job requirements included performing service work, such as restoring power, connecting and disconnecting power for customers, and climbing poles and ladders to hook up service. He also requested to be placed on call every other week for a seven-day period of time, and Gregg automatically received two hours of overtime pay for each “on call” service call, unless the amount of time required to complete the service call exceeded two hours.[1] Gregg also received a minimum of one hour per day overtime for each day he worked “on call.” Gregg’s pre-injury average weekly wage was $840.21.
¶ 4. On September 12, 2007, a hearing on the merits was held in Grenada, Mississippi before an administrative law judge for the Commission. The administrative law judge found that Gregg’s post-injury average weekly wage was $891.22,[2] which amounted to an increase of $51.01 from his pre-injury average weekly wage. Because Gregg earns more after his injury than he earned before the injury, the administrative law judge held that Gregg failed to prove a loss of wage-earning capacity. The judge also ruled as follows:
The claimant suffered an admittedly compensable injury in the form a[sic] back injury and was temporarily and totally disabled from the date of July 21, 2004 to and through the date designated and stipulated to be the date of maximum medical improvement, namely May 2, 2006.
Lay and medical testimony indicate that the claimant was ultimately returned to full duty with singular description and/or restriction of “no climbing” later specified to be “no pole climbing” which could indeed have been a part of serviceman work for the power company. However, lay testimony was replete with references that such “pole climbing” is not required for the discharging of all pertinent duties relative to the claimant’s current employment. He is in no danger of losing his job because of this permanent restriction[,] and, further, it has no impact on his wage[-]earning potential. Ergo, all factors considered, the claimant has suffered no [loss of] wage[-]earning capacity[,] and none is found.
¶ 5. Gregg appealed this decision to the full Commission, which subsequently affirmed the ruling of the administrative law judge. Gregg then filed a notice of appeal requesting review by the Webster County Circuit Court. The circuit court affirmed the Commission’s decision on April 14, 2009. Aggrieved, Gregg filed this appeal.
*492 STANDARD OF REVIEW
¶ 6. The Mississippi Supreme Court recognizes that when considering an appeal of a decision of the Commission, “[t]he findings and order of the ... Commission are binding on [the appellate court] so long as they are ‘supported by substantial evidence.’ ” Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994) (citation omitted). If supported by substantial evidence, this Court is bound by the Commission’s factual determination “even though the evidence would convince [us] otherwise if [we] were instead the ultimate fact[-]finder.” Winters v. Choctaw Maid Farms Inc., 782 So.2d 155, 159 (¶ 8) (Miss.Ct.App.2000). We reverse “only where a Commission order is clearly erroneous and contrary to the weight of the credible evidence.” Id.
DISCUSSION
¶ 7. Gregg argues that as a result of his work-related injury, he suffered a loss of wage-earning capacity; therefore, his loss of wage-earning capacity entitles him to permanent disability benefits. We note that Mississippi Code Annotated section 71—3—3(i) (Rev.2000) of the Workers’ Compensation Law (the Act) defines disability as “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” The statutory definition of disability, thus, creates a distinction between medical disability, which refers to a physical impairment, and “industrial” disability, which affects the claimant’s “ability to perform the duties of employment for the purpose of compensation.” Winters, 782 So.2d at 159 (¶ 10). Under the Act, the claimant bears the burden to prove an “industrial” disability. Id. To meet this burden, the claimant must satisfy a two-pronged test by first establishing a medical impairment. Id. at 160 (¶ 10). Then the claimant must show “that the medical impairment results in a loss of wage[-]earning capacity.” Id.
¶ 8. Gregg testified that he possesses a ten-percent disability rating and is only restricted from climbing poles. However, the record reflects that Gregg’s post-injury average weekly earnings exceed his pre-injury earnings. We note that “[a] presumption of no loss of wage-earning capacity arises when the claimant’s post-injury earnings are equal to or exceed pre-injury earnings.” Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1218 (¶ 32) (Miss.Ct.App.2005). This presumption may be rebutted by showing evidence that the post-injury earnings constitute an unreliable indicator of wage-earning capacity because of the following considerations: (1) an increase in general wage levels, (2) increased maturity or training, (3) longer hours worked, (4) sympathy wages, (5) temporary and unpredictable character of post-injury earnings, (6) his inability to work, (7) his failure to be hired elsewhere, and (8) the continuance of pain and any other related circumstances. Spann v. Wal-Mart Stores, Inc., 700 So.2d 308, 313 (¶ 20) (Miss.1997). This Court must consider the evidence as a whole before making a determination. DeLaughter v. S. Cent. Tractor Parts, 642 So.2d 375, 379 (Miss.1994).
¶ 9. Gregg acknowledges that he earns higher post-injury wages than pre-injury wages, but he attributes the increase in wages after his return to work to cost-of-living increases. Gregg claims that, post-injury, he received two cost-of-living raises, which resulted in an increase to his salary. However, no evidence appears in the record, other than Gregg’s own testimony, to substantiate these cost-of-living increases or to establish the monetary *493 amount received by Natchez Trace employees as a result of the increases.
¶ 10. To rebut the presumption that he suffered no loss of wage-earning capacity, Gregg also submits that his employer’s accommodation of his inability to climb amounts to “sympathy wages.” We point out that:
The willingness of [the claimant’s] supervisor to accommodate his ... injury does not prove [the claimant] suffered no post-injury loss of wage[-]earning capacity. This is because wages attributable to the kindness and generosity of an employer are not indicative of the employee’s actual capacity to command a certain wage on the open labor market.
Smith, 909 So.2d at 1221 (¶ 43). However, Natchez Trace argues that it accommodated Gregg as a matter of policy — not generosity. Natchez Trace submits that its policy accommodates employees with medical restrictions. Despite conflicting testimony regarding how much climbing is required of a serviceman, Natchez Trace submits that Gregg completed the majority of the tasks assigned to him. Gregg’s medical restrictions prohibited only tasks that involved climbing poles, such as repairing a bad connection or a yard light.[3] Natchez Trace asserts that reasonable accommodation of this restriction for this job was accomplished. In support of this policy, Ease Pulliam, the branch manager and Gregg’s supervisor, testified that the servicemen in Natchez Trace’s Houston branch do not climb poles at all. Lamar Dumas, a line foreman for Natchez Trace, testified that he knew of another serviceman employed by Natchez Trace who could not climb poles due to medical restrictions. Dumas also stated his crew included servicemen who did not climb. We further note that the administrative law judge found that pole climbing was not required for discharge of all the pertinent duties of a serviceman, and Gregg was not in danger of losing his job because of this restriction. The record further shows that lift trucks are often used now by electric-power servicemen, as opposed to pole climbing, in the discharge of their duties.
¶ 11. In turning to case law for guidance, we note that in Guardian Fiberglass, Inc. v. LeSueur, 751 So.2d 1201, 1206 (¶ 14) (Miss.Ct.App.1999), this Court found that Jeremiah LeSueur failed to establish a loss of wage-earning capacity where he worked “substantially similar hours each week since the accident as he did before the injury, his wages [were] proportionate to his job, and that his maturity, education, and training levels [were] the same as they were prior to his injury.” In addition, LeSueur’s manager suggested that Le-Sueur would receive assistance if any of his duties required him to lift beyond his weight-lifting restrictions. Id. As a result, this Court determined that LeSueur was not entitled to the award of permanent disability benefits. Id.
¶ 12. With respect to loss of wage-earning capacity, Gregg further claims that because of his “no climbing” restriction and inability to work overtime, he lost a minimum of fourteen hours of overtime pay per month, which he calculates amounted to a loss of $462 per month, when taking into account Gregg’s hourly rate of $22 and an overtime-compensation rate of $33 an hour. As a result, Gregg submits that he would be earning a minimum of $1,006.72 per week, but for the work-related injury and resultant work re- *494 strietion. However, the record again shows that Gregg’s insufficient testimony provides the only evidence presented to the administrative law judge to rebut the presumption that he incurred no loss of wage-earning capacity. More specifically, the administrative law judge found Gregg’s testimony insufficient to prove that his post-injury earnings provided an unreliable indicator of his true earning potential. In short, his weekly wage increased, and Gregg’s testimony failed to show both that he could not earn overtime pay and also that he could not perform the duties of a serviceman with his climbing restriction. Testimony in the record shows that Gregg never inquired as to whether he could “pull” a call in a supervisory capacity, which provides overtime pay without going into the field. Supervisors receive the service call and dispatch the work. Consequently, the administrative law judge and the Commission found that Gregg failed to present sufficient evidence to rebut the presumption of no loss of wage-earning capacity.
¶ 13. Regarding Gregg’s claim that he does not believe he would be hired as a serviceman for any other power company, we find no evidence in the record to support Gregg’s speculation or to show that he attempted to inquire about a position with another company. Again, the administrative law judge found that pole climbing was not pertinent to the discharge of all the duties of a serviceman; thus, this job could be performed with Gregg’s restrictions. Gregg’s claims must rest on more than mere speculation to rebut the presumption of no loss of wage-earning capacity.
¶ 14. In Smith v. Picker Service Co., 240 So.2d 454, 456-57 (Miss.1970), the supreme court affirmed the Commission’s finding that John Smith failed to rebut the presumption that due to increased earnings, Smith suffered no loss of wage-earning capacity. Specifically, the court observed that:
It is sufficient to say that a careful review of the evidence reveals that there was evidence from which the Commission could have found that [the] claimant had rebutted the presumption that his post-injury earnings were an unreliable basis for estimating capacity, but we cannot say that there is not substantial evidence to support the finding of the [Commission that he failed to overcome that presumption. [The][c]laimant’s post-injury work history of steady employment at substantially increased earnings ... is certainly strong evidence of non-impairment of earning capacity. The [C]ommission is the trier of the facts[,] and it was a question of fact whether [the] appellant had rebutted the presumption. The finding of the [C]om-mission is not against the overwhelming weight of the evidence[,] and there is substantial evidence to support the finding of the [C]ommission.

Id.

¶ 15. Similarly, this Court recognizes that it is not the trier of fact, and we reverse only where the Commission’s findings are not supported by substantial evidence. The circuit court noted in its judgment that one of the three commissioners dissented to the Commission’s decision to affirm the decision of the administrative law judge. However, two commissioners affirmed the administrative law judge’s decision. The dissenting commissioner surmised that had Gregg not received the work-related injury, his current wages would have been higher. The other two commissioners and the circuit court disagreed, finding that Gregg failed to prove with sufficient evidence whether or not his current wages would in fact be higher had he not been injured. Substantial evidence *495 in the record supports the Commission’s decision. Upon appellate review, we therefore affirm the judgment of the circuit court that affirmed the Commission’s denial of permanent disability benefits to Gregg. We find that the issues raised by Gregg are without merit.
¶ 16. THE JUDGMENT OF THE WEBSTER COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ. IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.

. The record reflects that Gregg voluntarily requested to be placed on call every other week; Natchez Trace never required him to be placed on call. Post-injury, Gregg is still sometimes called out on service calls in emergency situations, and he receives overtime pay for his services.

. Gregg’s pre-injury and post-injury average weekly wage amounts do not include any amounts earned in overtime pay.

. Gregg testified that fifty percent of his job as a serviceman involved climbing poles. However, Kase Pulliam estimated that only twenty-five percent of a serviceman’s job involves climbing poles.