WILSON, J.,
dissenting:
¶ 25. The Workers’ Compensation Law provides compensation to an injured worker for a “disability” resulting from a work-related injury, Miss.Code. Ann. § 71-3-7 (Supp.2015), and it defines “disability” as an “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the, same or other employment.” Miss.Code. Ann. § 71—3—3(i) (Rev.2011) (emphasis added). Thus, to be compensable, the injury and resulting disability must be the reason for a loss of wage-earning capacity. If an injured employee is unable to “earn the same wages [she] was receiving at the time of the injury” (id.) for some other reason, then there is no compensable “disability” under the Workers’ Compensation Law. Omnova Solutions Inc. v. Lipa, 44 So.3d 935, 940-41 (¶ 16) (Miss.2010); see also, e.g., Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176-77, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (discussing the “ordinary meaning” of the phrase “because of’). The employee bears the burden of proving her loss of wage-earning capacity is “because of’ her injury and disability. Omnova Solutions, 44 So.3d at 941 (¶ 16).
¶ 26. Because the injury and disability are compensable only if they are the reason for an employee’s loss of wage-earning capacity, the Mississippi Supreme Court has declared that it is
a well-settled rule of law ... that in determining wage-earning capacity in the situation where an injured employee returns to work and receives the same or greater earnings as those prior to his injury, there is created a rebuttable presumption that he has suffered no loss in his wage-earning capacity.
Id. at 941 (¶ 17) (quoting Agee v. Bay Springs Forest Prods., Inc., 419 So.2d 188, 189 (Miss.1982)) (emphasis in Omnova Solutions). The Court has explained that this presumption
may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity.Unreliability of post-injury earnings may be due to a number of things: increase in general wage levels since the time of accident; claimant’s own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings.
Omnova Solutions, 44 So.3d at 941 (¶ 17) (quoting Russell v. Se. Utils. Serv. Co., 230 Miss. 272, 282, 92 So.2d 544, 547 (1957)).
¶ 27. The presumption applies -in this case because there is no dispute that Mitchell returned to the same job at Hud-speth, without restriction or accommodation, and was paid the same or greater earnings as before her injury. Mitchell herself testified that the job’s duties and her employer’s expectations of her were the same as before the injury, that she was able to do the job, and that she would still be doing the job today if she had not been fired.
¶ 28. However, seven and a half months after resuming her normal work at the same or a greater rate of pay, Mitchell was fired. She was fired for cause because she refused to examine a patient at the request of a supervisor of one of the residential cottages on Hudspeth’s campus. Mitchell told the supervisor “she had just left the cottage” and “would not be coming back” that night. Mitchell said that the patient could wait until the next morning to be seen. As a result, another nurse had to be *625 called to examine the patient. Hudspeth also found that Mitchell was “rude and unprofessional in [her] conversation” with the supervisor who had requested the examination. Mitchell admitted that she should have gone back to the cottage to check on the patient. Mitchell was advised of her rights, as a state employee, to appeal her termination, but she failed to do so. Instead, she waited several months and then sought workers’ compensation benefits.
¶29, Before the Commission, Mitchell expressly argued that her termination was unfair, and she implied that the stated reason for her firing was pretextual. She emphasized that her termination notice listed numerous disciplinary actions for excessive tardiness, unexcused absences, or errors or omissions in charting medications or other incidents, all of which predated her injury. However, these arguments are irrelevant to her workers’ compensation claim. If she wanted to pursue these arguments, she should have appealed her termination, as she had every right to do for a fee of $100. Because Mitchell knowingly failed to avail herself of that right, the agency’s stated reason for terminating her—which is entirely understandable and reasonable on its face—should not be subject to question. See Wright v. White, 693 So.2d 898, 902 (Miss.1997) (“[F]or state law purposes the statutory method of administrative appeal and judicial review provided by the state civil service statute is the exclusive remedy for grievances related to state employment....");[1] see also Miss. Dep’t of Corr. v. McClee, 677 So.2d 732, 736 (Miss.1996) (holding that even if a state employee’s termination is properly appealed, the employee “bears the burden of persuasion that the alleged conduct did not occur”); Miss. Dep’t of Corr. v. Smith, 883 So.2d 124, 126 (¶ 1) (Miss.Ct.App.2004) (recognizing that an agency’s decision to terminate an employee is presumed correct). The alleged unfairness, of a state employee’s termination cannot be made into a workers’ compensation claim.
¶ 30. Because Mitchell “retum[ed] to work and receive[d] the same or greater earnings as those prior to [her] injury,” the administrative judge and Commission should- have applied “a rebuttable presumption that [she] has suffered no loss in his wage-earning capacity.” Omnova Solutions, 44 So.3d at 941 (¶ 17) (emphasis omitted). They did not, and this failure was reversible error. Id. at 942 ,(¶20). Further, Mitchell failed to present evidence that would “explain[ ] away the post-injury earnings as an unreliable basis for estimating capacity.”. Id. at 941 (¶ 17). Indeed, her insistence that her termination was unfair—and that she should still be working at the same job at Hudspeth— only serves to underscore that she has not experienced an “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment.” Miss.Code. Ann. § 71—3—3(i) (emphasis added). Mitchell herself insists that she is physically capable of returning to the same employment.
¶ 31. On the evidence presented to the Commission, it is apparent that Mitchell is unable to earn the same wages that she once did not “because of,” by reason of, or on account of her injury or any disability but rather because, she was terminated by Hudspeth for . cause. Again, Mitchell ad *626 mitted that she was able to do the job at Hudspeth and would return today if she were given that opportunity. Accordingly, she is no longer earning the same wages in precisely the same employment only because she was terminated for cause. Mitchell further testified that her limited, post-termination job search has been made more difficult because “the first question” a job application typically asks is “why you left your last job.” This is undoubtedly true, and being fired from one nursing job for refusing to examine a patient and unprofessional conduct certainly could make finding similar employment more difficult. Finally, Mitchell testified that it was now difficult or impossible for her to find similar employment because she has only an associate degree in nursing (ADN), and many employers require or prefer a bachelor of science in nursing (BSN). As with her for—cause termination, this sort of “incapacity has nothing to do with her injury; it has to do with her qualifications. In short, Mitchell did not merely fail to rebut the presumption that she has suffered no compensable disability—the evidence before the Commission confirmed what should have been presumed.
¶ 32. The majority does not apply the presumption discussed in Omnova Solutions but instead applies a presumption in favor of a loss of wage-earning capacity, arising from either Mitchell’s unsuccessful, post-termination job search, or perhaps Mitchell’s professed willingness to return to Hudspeth. However, the former presumption applies only if the claimant first “show[s] that, because of the work-related injury, he cannot secure work in the same or other jobs at pre-injury pay.” Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1220 (¶ 38) (Miss.Ct.App.2005). It does not apply in this ease because Mitchell did “secure work in the same ... job[ ] at pre-injury pay.” Id.
¶ 33. The latter presumption is also inapplicable. It arises if “the claimant, having reached maximum medical recovery, reports back to the employer for work, and the employer refuses to reinstate or rehire him[.]” Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1226 (Miss.1997). Seizing on the phrase “having reached maximum medical recovery,” Mitchell makes the clever argument that she is entitled to this presumption because—even though Hudspeth did reinstate her after her injury—her doctor did not certify maximum medical improvement until after Hudspeth had fired her, and she is now willing to return at Hudspeth. However, as Professor Bradley and Administrative Judge Thompson explain in the section of their treatise on this issue:
[Tjhere is little to recommend a mechanical use of a phrase (after [“maximum medical recovery” or “mmr”]) from one case when the phrase has no substantive value in addressing the matter at hand. The reason for the 'presumption when a worker tries to return to the same employer after mmr is that only then might the employer’s decision on whether to re-hire be a good indicator of employability.
John R. Bradley & Linda R. Thompson, Mississippi Workers’ Compensation Law § 5:26 n. 3 (2015) (emphasis added). The rationale for the presumption simply does not apply to a case such as this one, in which the claimant reports back to work without restriction, the employer reinstates her, and she is able to perform the job. That set of facts constitutes “a good indicator of employability”—not the employee’s subsequent termination for cause. Mitchell’s too-literal reading of Hale does not entitle her to a presumption of disability •
¶ 34. In summary, this case is subject to the “well-settled rule of law” that *627 “where an injured employee returns to work and receives the same or greater earnings as those prior to [her] injury, there is ... a rebuttable presumption that [she] has suffered no loss in his wage-earning capacity.” Omnova Solutions, 44 So.3d at 941 (¶ 17). Mitchell presented no evidence that her actual reinstatement by Hudspeth was “an unreliable basis” for this presumption. Id. Nor did she present sufficient evidence to overcome the presumption. Rather, the evidence shows that her loss of wages is due to her for-cause termination. Accordingly, because Mitchell failed to establish a loss of wage-earning capacity, I would reverse and render the judgment of the Commission. At the very least, the Commission’s decision should be reversed and remanded for further proceedings because it failed to apply the appropriate presumption, id. at 942 (¶20), and because we know that Mitchell’s loss of wage-earning capacity is due at least in part to her termination, not her injury. Accordingly, she certainly cannot establish a total disability.[2] Because the Court instead affirms the Commission’s decision, I respectfully dissent.
GRIFFIS, P.J., CARLTON, MAXWELL AND FAIR, JJ., JOIN THIS OPINION.

. In East Mississippi State Hospital v. Callens, 892 So.2d 800 (Miss.2004), the Supreme Court overruled Wright in part, but only to the "limited extent” that it "could be interpreted as a denial” of an employee's "right to assert appropriate § 1983 claims against state officials in their personal or individual capacities,” Callens, 892 So.2d at 822 (¶ 55).

. See City of Laurel v. Guy, 58 So.3d 1223, 1227(18) (Miss.Ct.App.2011) ("[W]hile a worker who is earning post-injury wages may nonetheless be entitled to an industrial loss greater than his medical loss, he cannot be compensated for a total loss.”) (citing Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740 (Miss.2002)).